FOSTER, Respondent, vs. LOWE, Appellant.

*February 2—February 19, 1907.*

*Vendor and purchaser of land: Contract presumed to be complete: Default in payment: Option to declare contract void: Notice of election: Action for price: Tender of conveyance, when not necessary: Disability to convey: Assignment of contract.*

1. A bilateral land contract purporting on its face to set out the mutual undertakings of the parties is presumed to be a complete expression of their final contract, and this presumption can be overcome, if at all, only by the clearest proof.

2. A land contract providing that if the purchaser shall fail to make any of the payments as stipulated the agreement "shall be thenceforth utterly void" and all payments thereon for-

feited, "subject to be revived and renewed in writing at the option of" the vendor, gives to the vendor, after such failure, the right to declare the contract at an end or to sue for the unpaid purchase price or for specific performance.

3. Commencement of an action for the purchase price and filing of the complaint is a sufficient declaration in writing of the vendor's election that the contract shall continue in force.

4. Where by the terms of a land contract the purchaser agrees to pay the whole price absolutely and the vendor promises that after such payment and upon demand a conveyance shall be made, the liability of the purchaser is absolute and no tender of conveyance or showing of ability to convey need either precede or accompany the recovery of the purchase price.

[5. Whether in such a case there might be an equitable defense or counterclaim where it was shown that the vendor had disabled himself to convey and was insolvent, not determined.]

6. The vendor in a land contract who assigns the contract or the right to the payments thereunder holds the legal title to the land in trust for the parties to the contract or, upon completion of the payments, for the purchaser alone, and such trust follows the legal title wherever it may go, except into the hands of a *bona fide* holder for value.

7. Where the vendor in a land contract, having the option to declare the contract at an end because of default in payments, assigns the contract, such assignment carries with it the right to exercise said option, and the vendor cannot thereafter exercise it.

APPEAL from a judgment of the circuit court for Clark county: E. W. HELMS, Judge. *Affirmed.*

Action at law upon two ordinary land contracts, dated August 18, 1898, in each of which the defendant promised to pay to one Conrad Krumrey the sum of $125, at specified dates, up to June 1, 1899, and of which he had paid on each contract the sum of $37.50. Krumrey agreed in the same instruments that, after said sum of $125 on each contract should be fully paid, he would, on demand, thereafter cause to be executed and delivered a warranty deed of the premises described, except for the taxes, which were agreed to be paid by the defendant. The contracts further provided:

"If the second party [defendant] shall fail to make any of the payments above specified, at the time and in the manner

above specified, . . . this agreement shall be thenceforth ut-
terly void and all payments thereon forfeited to the first
party, subject to be revived and renewed in writing at the op-
tion of the first party.".

The contracts were under seal and acknowledged. These
contracts were both assigned to the plaintiff by writing in-
dorsed thereon on August 25, 1898, for a valuable considera-
tion. The defendant wholly failed to pay any further sums
as promised in said contracts, and no written notice had ever
been given him of the exercise of election by either Krumrey
or plaintiff that the contract should be revived or renewed.
Defendant failed to pay the taxes for 1899 and all subsequent
years, and, the property being sold for taxes in May, 1900,
a tax deed had been issued to one Schuster in May, 1903, the
regularity of which was assailed but not decided. In October,
1903, Krumrey made a quitclaim deed of the contracted
premises to said Schuster.

The principal defense alleged was that the land contracts
did not contain the whole contract between the parties; that
a scheme had been entered into in June, 1898, to induce a
certain manufacturing partnership, Kerr Bros. & Co., then lo-
cated in Ohio, to come to Neillsville and establish a business
in a then vacant factory, and that they had entered into con-
tract with certain citizens of Neillsville, who were a self-con-
stituted committee, whereby Kerr Bros. & Co. stipulated that,
in consideration of certain aid from the citizens of Neills-
ville, they would establish a business, employing generally at
least twenty-five men, would equip the factory with machin-
ery, and would persist in said business for five years, with
some other agreements. Defendant was solicited to purchase
these lots, which were of actual sale value of only about $10
apiece, as a method of contributing to the aid or bonus which
was to be given to Kerr Bros. & Co., such solicitation being
by citizens of Neillsville, who were desirous, for the public
welfare, of securing this industry. Krumrey held title to the

lots merely as trustee for Kerr Bros. & Co. The claim was that the written contract made by Kerr Bros. & Co. with the citizens' committee entered into and formed a part of the contract for the purchase of these lots, and, they having breached this contract, defendant claimed to have been discharged.

The court found that the two land contracts sued upon were not shown to have been connected with or dependent upon the contracts made by Kerr Bros. & Co.; indeed, that defendant did not know either the existence or the contents of said Kerr Bros. & Co. contracts; that he was induced to make the land contracts by representations of fellow-citizens as to the advantages that would accrue to him and to the city of Neillsville from the location of the new industry there, and that Kerr Bros. & Co. had made some kind of a contract with somebody that they would there establish and maintain the business. Accordingly, the court held that the written land contracts must be deemed to embody the whole contract between Krumrey and the defendant, and that plaintiff was entitled to recover the amounts remaining due thereon, and rendered judgment in plaintiff's favor therefor, from which the defendant appeals.

For the appellant there was a brief by *Grow & Campman* and *J. R. & C. R. Sturdevant,* and oral argument by *Charles F. Grow.*

For the respondent there was a brief by *Marsh & Schoengarth,* and oral argument by *S. M. Marsh.*

DODGE, J. The land contracts involved are bilateral and, upon their face, purport to set out the mutual undertakings of the two parties. There is, therefore, a presumption that they do so, and that if the minds of the parties had in fact met upon any other elements, conditions, or propositions, all such had been abandoned, except as to those things which were expressly defined in the writing which, by their signatures, they had declared to be a correct and complete expression of

their final contract. *Conant v. Estate of Kimball,* 95 Wis. 550, 70 N. W. 74; *John O'Brien L. Co. v. Wilkinson,* 117 Wis. 468, 94 N. W. 337; *Jost v. Wolf,* 130 Wis. 37, 110 N. W. 232. Only by the very clearest proof, if at all, can this presumption be overcome. *Kercheval v. Doty,* 31 Wis. 476, 491. We are unable to say that the court's finding that it has not been so overcome is antagonized by any clear preponderance of the evidence, and must, therefore, proceed to the consideration of the rights of the parties upon the basis of the land contracts as written.

It is contended that, by the defendant's breach of the contracts in failing to pay the several instalments thereon as they became due, these contracts have become terminated, and, according to their very terms, are null and void. This subject was quite fully considered in *Shenners v. Pritchard,* 104 Wis. 287, 80 N. W. 458, where was pointed out the absurdity of a construction which would enable the wrongdoer to gain an advantage over and against the will of the other party by his own default, and the conclusion was reached that no such construction as here contended for was permissible, especially where, as is the case here, the contract expressly declared an option in the creditor to revive and continue the contract in force after such defaults. The conclusion reached was that "this clause in the contract leaves it for the vendor to say whether he will declare the contract void or not, and that he may elect to sue for the unpaid purchase money or for a specific performance of the contract, or to declare the contract at an end." We see no occasion again to review the authorities or reasons then fully considered, nor to depart from the rule of law established by that case.

Further, it is contended that notice of the exercise of the creditor's election to continue the contract in force is an essential prerequisite to commencing suit. That contention was also considered and negatived in the *Shenners Case,* and it was held that, so far at least as the demand for payment of

the money promised by the contract was concerned, the com-
mencement of the suit was an all-sufficient declaration and
notice of that election.   The only distinction on this subject
between the *Shenners Case* and this is that the creditor's op-
tion here is to be exercised in writing, which was not required
in the former case.   If the commencement of suit and filing
of complaint is a sufficient declaration of the exercise of the
election, as ruled in that case, it certainly satisfies the require-
ment of a writing, for it is in writing, and most unambigu-
ously declares the choice of the plaintiff that the contract shall
be in force and the money shall be paid.   As said in the *Shen-
ners Case,* no time is fixed for the exercise of this election,
and a contrary ruling would result merely in a dismissal of
this action until the notice had been given, when it might im-
mediately be recommenced.   This would be mere empty for-
mality in a case where the defendant's position is not that of
having been deterred from paying because of the supposed an-
nulment of the contract, but of resistance to any liability upon
it, however urgent the choice of the creditor that it should be
in force.

Another contention pressed is that it is shown that the
plaintiff has not the title to the land, and is not in a position
to make conveyance thereof upon payment. It has been uni-
formly ruled in this state that a contract of this sort, wherein
the purchaser agrees to pay the whole purchase price abso-
lutely in consideration of merely a promise by the grantor
that after such completed payment and upon demand a convey-
ance of the land shall be made, the former's liability is abso-
lute at law, and that no tender of conveyance, nor showing of
ability to convey, need either precede or accompany the recov-
ery of the purchase price.   *Gale v. Best,* 20 Wis. 44; *Shen-
ners v. Pritchard,* 104 Wis. 287, 80 N. W. 458; *Collins v.
Schmidt,* 126 Wis. 227, 105 N. W. 671.   In the last of those
cases the plaintiff was a mere assignee of one instalment of
the purchase price and did not hold any title to the real es-

tate, and made no offer of conveyance or showing of any ability to procure conveyance. The result of such holding is that when the purchaser shall have paid in accordance with the land contract, and not until then, he acquires a binding obligation on the part of the vendor to convey the land to him, and has a right of action to enforce that obligation either by suit for specific performance or action for damages resulting from breach thereof. Whether there might be an equitable defense or counterclaim where it was shown that the vendor had so disabled himself and was so insolvent that neither of these remedies could be available is a question which may be reserved until it arises. There is no showing in this case that Krumrey is otherwise than entirely responsible, nor that the land is not in reach of a suit and decree for specific performance, although it is shown that it has been conveyed by quitclaim to another person, who, however, is not proven to be a *bona fide* purchaser. The vendor in a land contract who assigns that contract or the right to the payments thereunder to another holds the legal title to the land in trust for the two parties under that contract, and such trust persists and accompanies the legal title wherever it may go, unless, indeed, into the hands of a *bona fide* holder for value. Of course, when payment is completed that trust is solely and exclusively for the purchaser, who thereby gains the complete equitable title to the land. *Church v. Smith,* 39 Wis. 492; *Bartz v. Paff,* 95 Wis. 95, 69 N. W. 297.

The suggestion that because Krumrey, some time after having assigned the land contracts, made a quitclaim of the land to a third person, he had exercised the option to declare the contract void so that the contrary election to now declare it valid and binding cannot be exercised, we do not deem of force. Under our present legal policy of easy and complete assignment of rights of action, at least those on contract, the assignment of the debt itself necessarily carries with it all securities and all rights of the first owner serving to make it val-

uable, and the assignment of the debts in this instance trans-
ferred to the assignee the right to exercise the option conferred
by the contract upon the vendor, and denuded the latter of any
right or power to so exercise it as to interfere with his as-
signee's protections for the debt. It would be obviously un-
reasonable to hold that Krumrey might, for a valuable consid-
eration, assign this debt to the plaintiff and still have the right
to declare that the contract between him and the defendant
should be void and no debt exist.

We discover no error in the judgment of the trial court.

*By the Court.*—Judgment affirmed.