SMITH, Appellant, vs. MERRILL and others, Respondents.

*December 14, 1907—January 8, 1908.*

*Contracts: Construction: Intention of parties: Vendor and purchaser: Real-estate brokers: Authority: Failure to conform contract to instructions.*

1. Where the intent of a contract is manifest from the phraseology employed and the terms and tenor of the stipulations, it must be given effect as expressive of the intention of the parties.
2. Where a real-estate broker, under the facts and circumstances which establish his agency, is restricted to making an absolute sale, for cash, at a given price, which facts are known to the vendee, a contract by the broker, whereby the vendee has the right to refuse to purchase the land at the stipulated price within an agreed time, makes the broker's contract an optional agreement, is not within his agency, and, in the absence of subsequent ratification, does not bind the vendor to make conveyance.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

This is an action for the specific performance of an alleged contract for the sale of certain lands, made by the plaintiff through her husband as her agent and by the defendant *H. P. Merrill* in behalf of himself and the other defendants. The defendants are residents of Portland, Maine. L. E. Waterman is a real-estate agent at Superior, Wisconsin, and negotiated the sale for the defendants. About the middle of September, 1903, Waterman wrote to *Merrill* respecting the sale of some lands owned by *Merrill* and asking for descriptions and the lowest prices. *Merrill* replied stating that the lands belonged to four persons, that they would like to sell the lands for cash, that they did not expect to get what they had paid for the lands, but that they would like some offer. Waterman again wrote to *Merrill,* describing the condition of the real-estate market in Superior, and stating that he had a party to whom he thought he could sell a forty of *Merrill's* at $15 per acre. *Merrill's* answer to Waterman stated that the lands comprised 213 acres, that they belonged to four persons, and that if any of the lands were sold they wished to dispose of it all. He asked Waterman whether he could dispose of it all for cash and promised to submit Waterman's best offer to the other owners. Waterman's next letter to *Merrill* asked for a more correct description. *Merrill* replied giving descriptions and stating that the correct acreage of the land owned by the four parties was 207.55 acres. He also stated that the parties wished to sell the land as a whole and as soon as possible. On November 25, 1903, Waterman wrote *Merrill* to the effect that he had a party who thought he could use the land and who had made him an offer of $10 per acre for the whole tract, and saying: "If you cannot take this price, please let me know the very lowest price you will take, so

I will be able to close up with a party when I get one." To
this letter of Waterman, *Merrill* replied as follows:

"Portland, Me., Nov. 27, 1903.

"*Mr. L. E. Waterman*—My Dear Sir: Your letter re-
ceived this morning, and in reply would say that the tract be-
longs, as I told you, to four parties. It will be necessary
to see them all in regard to the matter, and, as some are
away for Thanksgiving, cannot do so until Monday. Of
course the purchaser will pay the taxes any time before the
1st of March. Ten dollars is a very small price. We re-
fused eighteen last fall. I will let you know as soon as I
can see the parties. We don't want to give it away, as we
seem to be doing. As I say, will let you know as soon as
possible.                                    HENRY P. MERRILL,

"By M. E. MERRILL."

On November 30, 1903, *Merrill* sent the following tele-
gram and letter:

"Portland, Me., Nov. 30.

"*L. E. Waterman,* W. Supr., Wis. Accept offer subject
to condition in letter.                      H. P. MERRILL."

"Portland, Nov. 30.

"*Mr. Waterman*—Dear Sir: Your letter, which I re-
ceived, and to which I replied last Saturday, is before me.
Have seen the parties, and they wish very much you could
get more for the property. Will you not try to do so. As I
understand it, you offer $10 an acre cash for the whole tract.
We insist the parties buying should pay taxes. If you can-
not get any more, we will sell, and refer you to Little &
Nolte, who have charge of the property, to make out papers,
etc.                      Very truly yours,

"HENRY P. MERRILL."

On December 5, 1903, Waterman wrote *Merrill* asking
for the abstract, so as to have it in case he should be able to
close up the deal. To this *Merrill* replied as follows:

"Portland, Dec. 7.

"*Mr. L. E. Waterman*—Dear Sir: We wired you last
Monday, and hoped by this time to have heard from you.

We notified Little & Nolte that such a deal was in progress, and received a letter from them this morning expressing great surprise that such a price was thought of for a moment. They say it is a *very low* price even at the low state of the market.    We should like to know as soon as possible how the sale is progressing, for if there is to be any difficulty about it we would like to know.    The taxes must be paid; otherwise, we do not wish to sell at any such figure.    Kindly advise us, and get more if you can, even by waiting.

"Yours very truly,    HENRY P. MERRILL,
"By M. E. M."

On December 11, 1903, the following instrument was executed:

"The Wisconsin Investment Company, 914 Tower Avenue, West Superior, Wis., Dec. 11th, 1903. Received from A. K. Smith the sum of twenty-five dollars as earnest money and part payment on the following piece or parcel of land in Douglas county, Wisconsin, viz.: [Description.]    The consideration and purchase price to be ten dollars ($10.00) per acre and taxes for the year 1903, —— dollars, payable in the manner following: The sum of $25.00 on the delivery of this receipt and taxes for year (1903).    The sum of $2,045.55 on or before 12 o'clock noon, the 15th day of January, A. D. 1904, at —— per cent. per annum from the date thereof until paid.    Accrued interest on any incumbrance on said property to be deducted from above cash payment.    Abstract showing title to said property to be in ——, free and clear from all legal liens and incumbrances, to be furnished said purchaser on or before 12 o'clock noon, the 11th day of January, A. D. 1904; but, in case said abstract cannot be furnished by said hour and day, said purchaser to have one day extra extension to make the payment due —— in for each and every day said abstract is delayed. In case the abstract to said property should prove to be defective and so that it cannot be perfected within a reasonable time, then this receipt to be void, and money herein paid to be refunded; but in case the title should prove to be good, and said purchaser or his assigns should refuse to take the property, or should fail to make the payment due and payable on or before 12 o'clock noon, the 15th day of January, A. D.

1904, delays in furnishing abstract alone excepted, and then only for a time equal to the delay, then this receipt to be utterly, entirely, and shall remain forever void, and said money herein receipted for shall be forever forfeited to L. E. Waterman for consideration of this agreement, and said purchaser shall neither have any rights to said property by virtue of this receipt or any right of action for recovery of said money, nor any cause for considering himself aggrieved or for claiming damages by virtue of such forfeiture. It is hereby expressly stipulated, understood, and agreed that, if said payment of $2,045.55 and taxes for year 1903 is paid on or before 12 o'clock at noon the 15th day of January, 1904, extension on account of delay furnishing abstract alone excepted, and then only for a time equal to such delay, I will, after said payment, deliver to said purchaser a warranty deed. The abstract to be delivered to said purchaser at L. E. Waterman's office in Superior, at which place payments must be made to L. E. Waterman, and deed will be delivered to said purchaser when entitled thereto, according to the terms herein stated. It is further agreed that the said L. E. Waterman shall be held to no further responsibility concerning this transaction than to act intelligently and in absolute good faith with such purchaser.

"L. E. WATERMAN, Agent.

"Accepted: A. K. Smith.

"For value received I hereby sell, assign, and transfer to *May H. Smith,* her heirs and assigns, the within contract, and all my right, title, and interest therein.

"Witness my hand this 11th day of Dec. 1903."

After the execution of this instrument, on the same day, Waterman telegraphed *Merrill:* "Land sold, waiting for abstract. Answer quick." Merrill replied by telegraph: "Will send abstract at once;" and on December 14, 1903, wrote Waterman that he was unable to find the abstract; that he had a better offer for the land and had closed the deal. Plaintiff commenced this action December 19, 1903.

The court found the facts above given, and from the evidence adduced also found that all the parties to the transaction had acted in good faith; that Waterman had not

fraudulently misrepresented the value of the property, but that he had diligently endeavored to make a sale; that the defendant *Merrill,* the defendant *Frye* consenting, had authorized Waterman to sell the lands for the sum of $10 per acre, the purchaser to pay the taxes for the year 1903, and to make a binding contract in writing for the sale of the lands at that price for cash; that the principals to the transaction had had no dealings directly with each other; that the other defendants did not know of the transaction until the commencement of the action; that they had not authorized *Merrill* to act for them in accepting the offer or in making or directing the sale of their interests in the lands; and that the fair value of the lands was $18 per acre. Plaintiff made no claim in circuit court for a transfer of any of the interests of the defendants except those of *Merrill* and *Frye,* but demanded damages against *Merrill* because of his inability to comply with the contract for the transfer of the interests of the other defendants. This is an appeal from the judgment of the court dismissing the complaint and awarding defendants their costs and disbursements.

For the appellant there was a brief by *Luse, Powell & Luse,* and oral argument by *L. K. Luse.*

*Victor Linley,* for the respondents.

SIEBECKER, J. The court refused specific performance of the contract for the sale of the land owned by the defendants upon the ground that Waterman was not authorized to enter into the contract he made with the plaintiff for the purchase of the land. An examination of the evidence supports the court's finding that Waterman was authorized by *Mr. Merrill,* one of the defendants, to make a cash sale of the premises at the price of $10 per acre, the purchaser to pay the taxes on the land for the year 1903. The agency of Waterman clearly authorized him to make a sale of the premises for cash at the prescribed price and the payment of the

taxes, but did not authorize him to allow the purchaser to refuse to take the property at any time before final consummation of the sale by the delivery of the deed and the payment of the consideration. The contract of sale made by him is embodied in a writing in the form of a receipt and an agreement for the sale of the land to the plaintiff, and expressly provides:

"In case the abstract [of title] to said property should prove to be defective, . . . then this receipt to be void, and money herein paid to be refunded; but in case the title should prove to be good, and said purchaser, or his assigns, should refuse to take the property, or should fail to make payment [as specified], then this receipt to be . . . entirely . . . void, and said money herein receipted for shall be forfeited to L. E. Waterman for consideration of this agreement."

In the event of such a forfeiture the purchaser is to have no right to the property or the money so forfeited. It is also expressly stipulated that if the whole purchase price should be paid to Waterman within thirty-four .days after the date of the agreement, then Waterman was to deliver a deed of the land. This contract, set forth in the foregoing statement of facts, differs in form and phraseology from those usually employed in agreements for the sale of land. It contains no terms of present sale or transfer of the interest of the owners to the intended purchaser. In all its terms it speaks in terms of future execution of the bargain between the parties. Its context shows an intention of the parties that the purchaser should have the privilege of refusing the property within the thirty-four-day period fixed by them for the final consummation of the sale. The intent is manifest from the phraseology employed and the terms and tenor of the stipulations, and must be given effect as expressive of the intent of the parties.

Appellant contends that the context of this agreement is the same in legal effect as those construed in *Willes v. Smith,*

77 Wis. 81, 45 N. W. 666; *Shenners v. Pritchard,* 104 Wis. 287, 80 N. W. 458; and also *Foster v. Lowe,* 131 Wis. 54, 110 N. W. 829. The contracts in those cases were construed as giving the vendees no right to refuse to take the premises if the vendors elected to enforce them. In the last two cases this right of the vendors to enforce the agreement upon their election was specifically stipulated, and this was held to imply an understanding by the parties that the agreements were to remain binding obligations of the vendees at the option of the vendors. The agreement in the *Willes Case* in some of its features is not unlike the one before us, but it provided specifically that, upon default by the vendee to accept a good title within the time specified, the owner might declare the contract terminated. Under this stipulation it was resolved that the contract could only be terminated by the vendor, and the vendee was held to have agreed to an absolute purchase, from which there was no release except at the option of the vendor. As above stated, the agreement here clearly indicates that the vendor has no option to declare the contract terminated, and the vendee, by forfeiting the payment he had made, reserves the privilege of refusing to accept the property within the time limited by the agreement. These stipulations distinguish this agreement from the contracts in the cases above cited and such as constitute a sale of lands. The vendee having the right to refuse to purchase the land at the stipulated price within the time agreed upon makes this contract an optional agreement, and the vendee might refuse to take the property within the contract period. Waterman's authority to sell the land at the stipulated price for cash did not cover such a contract as this, and his action in the matter was not within his agency to sell the land for the defendants. The facts and circumstances which establish his agency show that he was restricted to making an absolute sale, for cash, at a given price. These facts were also known to plaintiff's agent,

A. K. Smith, in making the purchase for plaintiff. There is no proof that the defendants have ratified the contract so made by Waterman. Upon these considerations it results that defendants are not bound by the agreement, and the court properly found that Waterman was not authorized to make the sale upon the terms and conditions of the contract.

*By the Court.*—Judgment affirmed.