OMAHA LOAN & TRUST COMPANY, APPELLANT, V. EMMA GOODMAN ET AL., APPELLEES, IMPLEADED WITH FIRST NATIONAL BANK OF OMAHA, APPELLANT.

FILED JUNE 19, 1901. No. 9,933.

Commissioner's opinion, Department No. 1.

1. A Conditional Contract to a Corporation to Be Formed in Futoro, is an Offer Whose Acceptance Makes a Valid Agreement. A contract, running to a corporation to be formed and providing for a conveyance of land to it on certain conditions, must be taken as an offer whose acceptance, within a reasonable time by forming the corporation and performing the conditions, would constitute a valid agreement.

2. Agreement: FULFILLMENT. An agreement to furnish bond in sum of $150,000 to locate a university and commence building by May 1, 1888, and complete it by May 1, 1890, at cost of $50,000 or more, "and this and other buildings and campus to be used for university purposes," is not fulfilled by simply locating and erecting a building of the required cost within the time.

3. Indefinite and Uncertain Terms. Agreement to convey ten acres of forty owned by vendor, "being every fourth block in said forty acres," when the forty acres consist of blocks 59 and 60, 73 and 74, 75 and 76 and the north half of 91 and 92, is too indefinite and uncertain for specific enforcement.

APPEAL from the district court for Lancaster county. Heard below before HOLMES, J. *Affirmed in part.*

*Congdon & Parish* and *Francis A. Brogan,* for appellants.

*C. M. Parker, contra.*

HASTINGS, C.

In the year 1887, C. F. Goodman, with others, signed an agreement providing that the subscribers should pay the

money and convey the lands and lots opposite their names to secure the location and building of the University of the Christian Church of Nebraska on a certain quarter section of land in Lancaster county. The money was to be paid, one-fourth when half the foundation should be laid, the rest in one, two and three years, with eight per cent. interest. The lands were to be deeded to trustees when the university location should be agreed to by the state convention of the church, the trustees to give a good and sufficient bond to the subscribers that one of the buildings should be completed by January 1, 1890, and "permanently used for the purpose of a Christian university." Some other conditions were attached. Goodman's subscription was ten acres of land wholly undescribed. Subsequently the following agreement was made:

"Articles of agreement made this 30th day of December in the year of our Lord one thousand eight hundred and eighty-seven, between C. F. Goodman and Emma Goodman, party of the first part, and the Nebraska Christian Educational Board (when incorporated), party of the second part, witnesseth: That said party of the first part hereby covenants and agrees that if the party of the second part shall first perform the covenants hereinafter mentioned on their part to be made and performed, the said party of the first part will convey and assure to the party of the second part in fee simple clear of all encumbrances whatever, by good and sufficient warranty deed, the following lot, piece or parcel of ground, viz.: Ten acres in the N. E. ¼ of the N. W. ¼ section 21, town. 10, range 7 east, 6th P. M., being every fourth block in said forty acres; said parcel of ground to be conveyed on or before the first day of May, 1888, or as soon as I can obtain a release from the parties holding mortgages, and this agreement to take the place of the one previously signed by me agreeing to donate ten acres for the benefit of parties locating a college in that neighborhood. And the party of the second part hereby covenants and agrees to execute and place in trust a bond in the sum of $150,000 at issue of the above deed

that they will locate the university of the Christian Church of Nebraska on the S. E. $\frac{1}{4}$ of section 16, town. 10, range 7 east of the 6th P. M., and to commence one of the buildings of said university by the first day of May, 1888, and complete same by the first day of May, 1890, at a cost of $50,000 or more, and this and other buildings and campus to be used for university purposes. And in case of the failure of the said party of the second part to perform any of the covenants on their part hereby made and entered into this contract shall at the option of the party of the first part be forfeited and determined and the party of the second part shall forfeit all their rights on this contract, and said first party shall have the right to re-enter and take possession of the premises aforesaid. It is mutually agreed that all of the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties." It was signed only by Goodman and wife.

It appears the educational board referred to was organized February 14, 1888. No bond was ever given as provided in the agreement. The university was located as agreed, a building commenced within the time and finished in April, 1890, costing about $80,000. The deed was not given. At the time of the agreement, the forty acres consisted of blocks numbered 59 and 60, 73 and 74, 75 and 76, and contained the north half of blocks numbered 91 and 92 in Bethany Heights Addition to Lincoln, and all belonged to Goodman. In 1889, the board procured appointment of appraisers under the statute and had their property appraised, including subscriptions and donations, but it did not include this land or contract. C. R. Van Duyn, treasurer, says that Goodman told him that when he could get a blanket mortgage off this land he would deed. Van Duyn thinks this was in 1893. No other claim of right by the board appears; and in 1892 Goodman and wife vacated the plat of Bethany Heights as to this land. October 14, 1893, the plaintiff loan company filed a judgment in Lancaster county against Goodman for $1,099.51 and $15.48

costs. November 4, 1893, the agreement was filed with the register of deeds and recorded in the miscellaneous records. It was never acknowledged. November 17, 1894, Goodman and wife made a mortgage to the First National Bank of Omaha for $6,000 on this forty acres and other lands. The judgment of plaintiff appearing on record, its amount was deducted from the $6,000 and indorsed on the note.

January 11, 1896, plaintiff commenced suit to set aside an old mortgage and have the property sold on its judgment; making the First National Bank and Goodman's widow and executrix, he having died in 1895, his children, the educational board, and one Robert S. Dill parties defendant, together with a mortgagee whose lien was alleged to have been satisfied. It asked that all parties be compelled to show their rights and priorities and a sale had to satisfy its judgment. Dill answered, setting out the facts as to the educational board's claim and an assignment January 26, 1896, of that claim to himself and asked specific performance as to an undivided one-fourth of the forty acres. The First National Bank answered, denying any right in Dill, admitting plaintiff's lien as first and asking to foreclose its mortgage for $4,900.49 and interest.

Goodman's executrix, and, after her resignation pending the suit, his administrator, denies that the educational board ever perfected its claim; says that it was not in existence when the agreement was made, and denies all rights of Dill under it, and pleads some payments on the judgment and the mortgage of the bank. These payments were subsequently admitted, and the only question here is as to Dill's claim for specific performance and its priority over the plaintiff's judgment and the bank's mortgage. The trial court found Dill entitled to a conveyance of an undivided one-fourth of the forty acres, and his rights prior to both the judgment and the mortgage. From this part of the decree is the appeal.

Appellants urge (1) that the alleged contract is no contract, because never executed by the second party, though

clearly intended to be, and that it could not be binding, because the second party was not in existence; (2) that it was abandoned by the educational board; (3) that it was never performed; (4) that its description of premises is too indefinite.

As to the first point, the terms of the contract bear out the appellants' contention. It would be difficult to draw an instrument more strictly bilateral in its form. However, every instrument must be interpreted by its surroundings and connections; and in considering the facts surrounding this contract we are compelled to conclude that this was an agreement for a conditional subscription, an offer to the other parties when they should be incorporated, which looked to their incorporation and undertook to carry out this agreement when they should comply with its conditions. Such an offer, of course, could be withdrawn at any time before acceptance; and if no action towards organizing the corporation was taken within a reasonable time, it would be deemed withdrawn. If, however, within a reasonable time, the incorporation was effected and the conditions performed before withdrawal of the offer, it would seem to make a binding obligation. Counsel for appellants make no claim for the application of the well-known doctrine that specific performance of an agreement for a gift will not be enforced, and that this remedy avails only upon contracts for a valuable consideration. Pomeroy, Equity Jurisprudence, sec. 1405. Probably they thought the location of the university and erecting of its buildings sufficient to take the case out of the rule by establishing a subsequent valuable consideration and to bring this gift under the exception made for one who has expended money or changed his position in expectation of the promised gift. *Darke v. Smith,* 45 Pac. Rep. [Utah], 1006. If so, however, it must be presumed from the fact of building at the agreed place. The record fails to disclose any other proof that this agreement was any part of the inducement to either location or building.

The incorporation was effected within forty days after

the execution of the Goodman agreement. Nothing appears to show that this was an unreasonable delay. The question remains, did they comply with the terms of this agreement? They had incorporated as an educational board. They commenced a building by the time stipulated and completed it by the time limited at a sufficient cost. Appellee Dill contends that this was all the contract required. It hardly seems so. This agreement in fact did not stipulate for the location of the university and its building, but for a bond that it should be located and built, "and this and other buildings and campus used for university purposes." This was all to be done before the right to a deed should accrue. The other party can not say that it is better to have this building on the location than the security for it. The owner had stipulated for what he wanted, and he could not be required to take something else. This bond was to be for something more, viz., "this and other buildings and campus to be used for university purposes." The bond stipulated for in the first subscription was to "permanently maintain a Christian university." The object that Goodman had in signing this agreement may, for aught we know, have depended entirely upon the making and deposit of this bond within a reasonable time. At all events he stipulated for it, was entitled to get it before making the deed, and was under no obligations to accept anything else. This contract is not to deed lands when a college is located and built. The incorporation of the board and the giving of the stipulated bond in any reasonable time would have perfected its right to whatever the contract gives. The actual making of the deed might have had to wait until the land was freed from the old mortgage, but the donees' right to it would have been perfect. The agreement is not in the alternative. If the furnishing of the required bond to locate, build and use for university purposes would comply with it, then surely merely locating and building would not. It is urged that Goodman could not sit down and wait till the agreements of the contemplated bond were all complied with and then

say, after getting all the benefits, that the agreement had not been fulfilled. As above suggested, the immediate assurance which such a bond would have given may have been the moving consideration for the gift. The securing the future use of the building may have been uppermost. A donor is surely under no obligation to make demand of performance of conditions by a donee.

The defective description is also objected to. When this contract was made the land was platted. It remained so until two years after the right of the educational board became, as its assignee claims, perfect. The plat is still in existence and can be applied to the ground. Its vacation took away no rights of the board in any specific land and gave it none in any other. If it ever became entitled to a conveyance of anything, it was some specific ten acres obtainable by taking every fourth block in the forty acres described. The vacation of the streets and alleys would have no effect except on the public easement. The ground would still be there and the plat in the files, both just as certain and as recognizable as before. The situation of these blocks and the impossibility of telling from this description what was intended to be covered by it has been indicated. It seems to be clear that an undivided interest was not to be conveyed, for a division is provided for. The court, however, can not make the division, for the point of commencement to count off each fourth block is not indicated. The contract must be such as can be specifically enforced by the decree of the court. So long as the parties left it to be determined by themselves where the beginning should be made, the court can not begin for them. 3 Pomeroy, Equity Jurisprudence, secs. 1404, 1405; *Camden & A. R. Co. v. Stewart,* 18 N. J. Eq., 489. In *Nippalt v. Kammon,* 39 Minn., 372, a description, like the one we have, was found too vague for specific enforcement. In that case the defendant agreed to sell "5 acres, lot 3, sec. 23, town. 28, range 23." The court says it has no means of knowing which five acres was intended. No more have we as to which ten of the forty, all of which was owned by Good-

man, is meant by our contract. Similar indefinite descriptions are held to prevent a decree for performance in *Burnett v. Kullak,* 76 Cal., 535; *Rochester v. Yesler's Estate,* 6 Wash., 114; *Appeal of Holthouse,* 12 Atl. Rep. [Pa.], 340; *Pierson v. Ballard,* 32 Minn., 263.

It is therefore recommended that the decree be reversed as to defendant, Robert S. Dill, and his cross-bill dismissed, and affirmed as to the findings and decree for plaintiff, the Omaha Loan & Trust Company, and defendant First National Bank of Omaha.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the above reasons the findings and decree in favor of cross-petitioner, Robert S. Dill, are reversed and his cross-bill dismissed; the decree in other respects is affirmed.

JUDGMENT ACCORDINGLY.