[No. 11061. Department One. September 8, 1913.]

PETER SANDBERG et al., *Plaintiffs and Appellants*, v. FRANK J. SCOUGALE et al., *Defendants and Appellants*, DOMINIC CAVALERO et al., *Defendants and Respondents*.[1]

PARTNERSHIP—DISSOLUTION—LIQUIDATION—RIGHTS OF PARTNERS— ESTOPPEL. Where three partners in a logging venture were interested in timber lands, and in standing timber that had to be removed within two years, a dissolution of the partnership by a sale of the interests of one partner to another, does not prevent the purchaser from proceeding to carry out the venture by paying taxes and logging the timber, where it was necessary to save the stumpage from loss and he acted in good faith; and the third partner, who refused to aid or take part in the work, is estopped, after waiting to see if the operations proved advantageous, to deny his right to log the land and wind up the affairs of the partnership.

[1]Reported in 134 Pac. 1051.

PARTNERSHIP—ACCOUNTING—ADVANCEMENTS.   Evidence that a partner, making advances to conduct logging operations, might have bought cheaper equipment, does not establish that he did not conduct the operations economically, where the equipment provided was standard and usually employed in that class of work.

SAME—PERSONAL EXPENSES—EVIDENCE—ADMISSIBILITY.   A partner conducting logging operations, is not, in the absence of an express agreement, entitled to be reimbursed for personal expenses by way of railroad fare and hotel charges "for marketing the products of the firm;" and it is not admissible to show that the selling of timber in like quantities involves an average expenditure in a certain amount by way of personal expenses.

INTEREST—RATE—LEGAL RATE IN ABSENCE OF WRITING.   Where there is no written contract for the payment of interest, testimony of witnesses as to an oral contract for "bank interest" must be considered in the light of Rem. & Bal. Code, § 6250, providing for interest at the rate of "six per cent per annum, where no different rate is agreed to in writing between the parties."

Appeal from a judgment of the superior court for Snohomish county, W. P. Bell, J., entered June 19, 1912, upon findings in favor of the defendants, in an action on contract, tried to the court. Modified.

*Bates, Peer & Peterson* and *Fogg & Fogg*, for appellants.

*Coleman, Fogarty & Anderson*, for respondents.

PER CURIAM.—In the summer of 1906, Dominic Cavalero, Norval McGhie and Frank Scougale purchased 360 acres of timber land; also, bought 720 acres of timber on a stumpage basis. The land was situate near Gig Harbor, in Pierce county, Washington. The land, timber, and subsequent purchases of the right of way, and expenses incidental to logging the land and putting the product in booms in tide water, involved an expenditure of over $200,000. Scougale had no money, and Cavalero advanced his one-third without security. The amount due from Scougale to Cavalero on account of the purchase price is not in dispute, although Scougale denied the right of Cavalero to recover interest. He contends that it was agreed that he was not to pay interest, while Cavalero and McGhie testified that it was agreed that he should pay

bank interest, or eight per cent. It was the intention of all
parties that the work of logging should be begun within a rea-
sonable time after the partnership had been entered into. The
time limit for removal of most of the timber bought on a
stumpage basis was two years. The work was not begun im-
mediately, for several reasons which we find to be sufficient,
and was not begun until the year 1909, when Cavalero, who
was a practical logger and engaged in the logging business,
went about the work on his own account. He built a logging
road and equipped it, made boom grounds, bought donkeys,
cables, boom sticks and other paraphernalia of the camp.
Scougale, although invited, if not requested, to participate in
the work of logging, did nothing. He afterwards brought
suit against Cavalero (*State ex rel. Scougale v. Superior
Court*, 55 Wash. 328, 104 Pac. 607, 133 Am. St. 1030), for
damages in the sum of $42,000 alleged to have been suffered
because the work of logging was not promptly done, and cer-
tain options had been permitted to lapse. This action seems
to have been abandoned. Reference to the former case is ma-
terial only in so far as it shows Scougale's willingness to sub-
scribe to the acts of Cavalero and to take his compensation
in damages. Scougale afterwards mortgaged his interest in
all of the partnership property to Sandberg, who foreclosed
and bought the interest of Scougale at sheriff's sale. In
1909, and before Cavalero began the work of removing the
timber, McGhie sold out to Cavalero. This action was finally
begun by Sandberg, who sets up the history of the venture
and prays for one-third of the amount of the proceeds of the
logs and piles, with legal interest, less Scougale's one-third
of the original cost price of the property; that the property
of the partnership be sold, and that the proceeds be divided.
He is supported and sustained by Scougale. While the argu-
ment in the briefs is directed to specific findings of the court
which are attacked and defended by counsel, we think the
true result may be the more quickly arrived at by reference

to the legal propositions involved, with such incidental reference to the facts as may be necessary to illustrate them.

It is first contended that the court erred in refusing to find as a fact that Cavalero agreed, early in 1907, to log the timber at $5.50 per thousand. Appellant undertakes at this time to charge Cavalero with all timber at $8 per thousand, and give him credit for $5.50 per thousand. We have examined the testimony with some care, and are of the opinion that the finding that there was no such contract should be sustained. If there ever was a contract of that kind, it was not acted upon, and the subsequent negotiations of the parties, as well as their conduct, indicates that all thought of it was abandoned. In anticipation of this holding, appellant contends that the original partnership was dissolved by the sale of McGhie's interest to Cavalero. Story, Partnership (7th ed.), § 307; Parsons, Partnerships (3d ed.), p. 433-4; Shumaker, Partnerships, p. 416; 22 Am. & Eng. Ency. Law (2d ed.), p. 206; 30 Cyc. 653: and many cases to be found in the foot notes of these texts. He further contends that, after such dissolution, Cavalero could do nothing that could bind the partnership; that, by reason of the sale by McGhie of his interest, Cavalero and Scougale became tenants in common, and as such Cavalero must account for the value of the timber without diminution for the expenses and cost of removal. To sustain this contention appellants cite: *Foster v. Weaver*, 118 Pa. St. 42, 12 Atl. 313, 4 Am. St. 573; *Everson v. Seller*, 105 Ind. 266, 4 N. E. 854; *Sligo Furnace Co. v. Hobart-Lee Tie Co.*, 153 Mo. App. 442, 134 S. W. 585; *Wright v. Skinner*, 34 Fla. 453, 16 South. 335; *Bailey v. Hayden*, 65 Wash. 57, 117 Pac. 720.

The general rule is that the sale of a partner's interest dissolves the partnership. This rule is not without its qualifications, and reference to the books will show that, as between partners, the qualification or explanation which is stated in all the texts:

"The expenses and outlays of a partner continuing the business after dissolution for mutual benefit are allowed; and expenses by a surviving or liquidating partner in winding up." Bates, Partnership, § 769; 30 Cyc. 659; 22 Am. & Eng. Ency. Law. (2d ed.), pp. 205, 211, 212.

is as often applied as is the general rule.

Upon the sale of a partner's interest, a dissatisfied partner may concur with the remaining partner or partners, or may himself close up the partnership business. If he is unwilling to do this, he may resort to a court of equity and have a receiver appointed. It does not follow that, because a technical dissolution is worked by the sale of a partner's interest, the business of the firm is paralyzed and the surviving or remaining partners are powerless to protect their investment or their interest in the concern.

"Notwithstanding the dissolution of the partnership, there still remain certain rights, duties, powers, authorities, and relations between them which the law recognizes and supports, because they are, or may be, indispensable to the complete arrangement and final settlement of the affairs of the partnership; and, therefore, in a qualified and limited sense, the partnership may be said for those purposes to continue between the parties until such arrangement and settlement take place. . . . and the consequence, therefore, must be, that for the purpose of making good outstanding engagements, of taking and settling all the accounts and converting all the property, means, and assets of the partnership, existing at the time of the dissolution, as beneficially as may be for the benefit of all who were partners, according to their respective shares and proportions, the legal interest must subsist, although for all other purposes the partnership is actually determined. . . .

"Moreover, it is plain that if a total extinction of all rights, powers, and authorities of the partners to deal with the partnership property, funds, and effects, immediately followed upon the dissolution of the partnership, it would amount to a complete suspension of all right and authority to apply any part thereof to the payment and discharge of the existing partnership debts, or to collect the debts due to the partnership, or to adjust unsettled accounts, or even to close any outstanding adventures or inchoate operations. The mischiefs,

therefore, would be positive and irreparable without the intervention of a court of equity to compel the parties to do that which the law has wisely allowed without compulsion, or to appoint a receiver who should perform the like functions in a slow and expensive, and, for the most part, a less active and skilful manner." Story, Partnership, §§ 325, 327.

The subject-matter of the partnership in this case was such that it required the attention of those who were interested, and in the event of the refusal or inability of one of the remaining partners to act or to contribute his time and money to the promotion of the business of the concern, the other partner could proceed to carry out the venture; the only limitation upon his conduct being that he proceed to do so in an honest and in an economical way. The testimony shows that is was up to Cavalero, he being able so to do, to proceed with the work; otherwise the 720 acres of timber held on stumpage contracts would have been lost. Appellants are not in a position to deny the right of Cavalero to proceed to log the land. Neither did the partnership have any funds to meet taxes and other charges. Appellants should have manifested their dissatisfaction at the time Cavalero began his logging operations, or within a reasonable time thereafter. The courts were open and would have given a remedy in the way of a receivership, or would have compelled Cavalero to log the land under the direction of the court. They have held themselves in a position to take the benefit of the logging operations if it proved to be advantageous to do so. Equity will not permit them to deny Cavalero's right to wind up the affairs of the partnership, no reason appearing other than that the venture was not as profitable as they hoped that it might be.

Taking a perspective of the whole case, the facts and circumstances strongly imply that it was originally intended that Cavalero would finance the whole deal, and that Scougale would have no return for his time except as it was realized out of the final balance over and above the amount Cavalero had advanced for him.

The only questions remaining, therefore, are, whether (1) the work was economically done, (2) whether Cavalero has accounted, and (3) whether certain items allowed as interest, attorney's fees, etc., are proper charges against the interest of Cavalero.

Taking the figures as found by the court, and the amount of timber as contended for by respondents—and they seem to be as nearly correct as it is possible for us to make them—it cost, including the price paid for the land, stumpage, equipment, and interest on the sums advanced by Cavalero and borrowed from banks, $8.93 per thousand feet B. M. to log the land, or deducting the cost of the land and equipment from the total expenditures, the cost of logging the timber alone was $5.96 per thousand feet B. M. This includes interest. The court found that Cavalero had received $199,333.96. He has received, therefore, $7.83 per thousand feet B. M. The court found accounts and bills receivable of the probable value of $10,000. There are also some slight items, a few logs, piles, booms, etc., remaining that might be added, but their value is inconsequential as compared with the whole, and they would not materially change these figures. We are not prepared to say that the work was not economically done. The testimony relied on to show that it should have been done for less was the evidence of Scougale that Cavalero had, in 1907 and 1908, agreed to do the work for $5.50 per thousand, and that he, Scougale, had negotiated with another party who had agreed to do the work for $5 per thousand. Cavalero denies that he ever agreed to log the land at the price stated. The other contract was never entered into. There is nothing in the record that would warrant us in saying that the sums paid out by Cavalero in the course of his logging operations were not justly paid. It is not shown that he hired too many men or that he paid extravagant wages. Some attempt is made to show that he might have bought cheaper equipment, but equity will not condemn him for buying that which is shown to be standard and of the character usually employed

in carrying on that class of work. We therefore find that, although done without profit other than as is represented in the equipment on hand, and the 330 acres of logged-off land, the work was not extravagantly done.

The major portion of the briefs is devoted to a discussion of the amount of timber that was upon the land and the amount accounted for. The court made no finding as to the amount of timber. This should have been done, for it is the important and crucial fact in the whole case. Instead of sending the case back for further findings, as we might have done, and perhaps should have done, we have devoted our own time to a consideration of this item. So far as we can ascertain from the whole record, we are unable to say that Cavalero has not accounted for all of the timber on the land. The testimony that he has not done so is inferential rather than positive, and is insufficient to overcome the showing made by him.

The court allowed Cavalero the sum of $800 to cover personal expenses "by way of railroad fare, hotel charges," etc., and "for marketing . . . the products of the company." Under certain circumstances, a partner is entitled to be reimbursed for personal expenses and for sums paid out for the benefit of the concern, but the allowance of this sum is not warranted by reference to any fact disclosed in the testimony. A partnership cannot be called on to pay personal expenses unless they are clearly proven; neither can a partner, in the absence of an agreement, recover anything in the way of compensation for marketing products. Cavalero refers to no items, submits no vouchers, nor does he show any transactions that would warrant us in allowing him expenses or extra compensation. His testimony is wholly insufficient to warrant the finding of the court:

"Q. Was it necessary for you in looking after the company's business to travel a great deal and spend money for traveling expenses? Mr. Peer: Under the issues in this case, we object as incompetent and immaterial. The Court: Objection overruled and exception allowed. A. Yes, I stood my expenses. Q. Now, Mr. Cavalero, what amount of money did

you necessarily expend when traveling around in the company's business? A. Well, I spent considerable. Q. State the amount if you can. A. About fifteen hundred dollars. Q. Since it began logging? A. Since it began logging, from the first down to the end."

Counsel made an offer to prove by a witness who was engaged in the business of selling logs that the selling of timber products involves an expenditure of money in the way of personal expenses. The offer was rejected and properly so, for items of expense cannot be proved in this way, but it illustrates the misunderstanding of counsel, and the insufficiency of the proof. It follows:

"At this time, your honor, we make the offer to prove by this witness that in selling logs and piles and poles in the quantity manufactured or put up by a camp the size of the Gig Harbor Timber Company, at the lowest estimate, that the average expenses of such marketing, including railroad fare, hotel bills and such other expenses as are incidental to selling logs and timber, which everyone knows to be treating and sometimes may be in drinking, would be not less than one hundred dollars a month. We make that offer."

The item of $800 was improperly allowed.

The court has allowed Cavalero interest at the rate of eight per cent upon the money advanced by him to pay the purchase price of the land. There was no written contract. Scougale insists that it was understood that he was not to pay any interest, while Cavalero and McGhie both testify that he agreed to pay bank interest or eight per cent. We think, notwithstanding the preponderance of the spoken evidence, that this charge was improperly made. The testimony of the witnesses must be considered in the light of the statute:

"Every loan or forbearance of money, . . . shall bear interest at the rate of 6 per centum per annum where no different rate is agreed to in writing between the parties." Rem. & Bal. Code, § 6250 (P. C. 263 § 1).

When so considered, the allowance of any rate of interest other than the legal rate is unwarranted.

The decree of the lower court will be modified by striking out the item of $800, and reducing the interest charge from eight to six per cent. In all other respects, it is affirmed. Appellants will recover their costs in this court.