[No. 23372. *En Banc.* March 3, 1932.]

RALEIGH-HAYWARD COMPANY, *Appellant*, v. CLINTON C. HULL *et al., Respondents.*[1]

*E. K. Murray,* for appellant.

*J. Charles Dennis,* for respondents.

BEELER, J.—For the sake of clarity, we insert the following sketch:

[1]Reported in 8 P. (2d) 988.

This action was brought to quiet title to real estate, including that portion indicated on the sketch as "property in dispute." The cause was tried to the court without a jury, and resulted in findings of fact from which it was concluded that the plaintiff was not entitled to the relief which it sought; and from a judgment entered thereon, the plaintiff has appealed.

The facts are these: April 9, 1908, there was filed in Pierce county, a plat of what is called "Hyada Park," covering a tract of ground which was divided upon the plat into blocks, lots and streets. One of the streets shown upon the plat was Wau-Tau-Ga avenue, extending north and south. Extending west from this street was Hyada boulevard. The next street to the south was Kla-Pache avenue. This latter street, after extending west from Wau-Tau-Ga avenue a few hundred feet, turned in a northwesterly direction and intersected with Hyada boulevard.

On September 29, 1921, the Willapa Improvement

Company, Herbert E. Willson, appellants' grantor, together with some thirty-seven additional persons owning property in Hyada park, filed a petition with the county auditor and clerk of the board of county commissioners of Pierce county, praying for the vacation and narrowing of certain streets and boulevards in Hyada park. On October 29 following, the commissioners entered an order vacating various streets, including the whole of Kla-Pache avenue and the south twenty feet of Hyada boulevard. Prior to and *at the time of the vacation,* the title to all the property involved in this proceeding, that is—lots 43, 44 and 45, in block 1, and lots 1 and 2, in block 12,—together with lots 46 to 48 in block 1, all of block 13, which is situated on the north side of Hyada boulevard and opposite said lots 43, 44 and 45, as well as certain additional lots in block 12, was in the Willapa Improvement Company.

February 27, 1923, the Willapa Improvement Company conveyed lot 44, in block 1, to the respondent Lenhart; June 12, 1924, it conveyed lot 43, block 1, to the respondent Hull; May 23, 1927, it conveyed lot 45, block 1, to the respondent Harrison; July 12, 1927, it conveyed to Herbert E. Willson, the appellants' grantor, the deed describing the property as follows:

"Lots one (1) and two (2) in block twelve (12) of Hyada Park, Pierce county, Washington, according to the plat thereof filed for record in the office of the auditor of said Pierce county on the 9th day of April, 1908, *together with all parts of Kla-Pache avenue and Hyada boulevard* (shown upon said plat) *heretofore vacated and thereby attaching to and forming part of said lots one (1) and two (2)."*

On April 1, 1930, Willson conveyed to the appellant, by deed, the following described property:

"All of lot one (1) in block twelve (12), as shown and designated upon a certain plat entitled 'Hyada

Park, Pierce county, Washington,' which plat was filed for record in the office of the Auditor of Pierce county, April 9, 1908, excepting the east twenty (20) feet thereof, but including the south twenty (20) feet of Hyada boulevard vacated, lying between the east line extended of that portion of lot one (1) above described and the center line of vacated Kla-Pache avenue, and including also all that part of Kla-Pache avenue vacated, lying northeasterly of the center line thereof; the east boundary of said vacated portion of Kla-Pache avenue herein conveyed being the east line extended of that portion of lot one (1) above described and the westerly limit of said vacated portion of Kla-Pache avenue herein conveyed, being the intersection of the center line of said Kla-Pache avenue with a line parallel to and twenty (20) feet north of the north line of said block twelve (12); all of said vacations being by order of the county commissioners of Pierce county, on October 29, 1921.''

It will be observed that this last description includes what was, prior to the vacation proceedings, a portion of Kla-Pache avenue and Hyada boulevard as indicated on the sketch as ''property in dispute.''

August 26, 1930, and after the present action was instituted, the Willapa Improvement Company gave a quit-claim deed to each of the respective owners of lots 43, 44 and 45 to the strip between the easterly and westerly lines of their respective lots extending northerly to the northerly line of the vacated portion of Kla-Pache avenue and Hyada boulevard, being the property indicated on the sketch and embraced within the area bounded by the letters A, B, C, and D.

We shall first consider the effect of the vacation order and the resulting status of that portion of the property involved in this controversy marked on the sketch as ''property in dispute.'' The principle that owners of lots abutting upon a street have an interest, present or inchoate, to the middle of the street,

can have no application in this case, because, by the order of vacation, the *whole* of Kla-Pache avenue ceased to be a street. The effect of the vacation was to free the land, which was formerly a street, of the public easement. Thereupon, the vacated land became a distinct and separate tract. In other words, at the time the Willapa Improvement Company conveyed to the respective respondents and to Willson, there was no Kla-Pache avenue in existence. The effect of vacating that avenue was to withdraw the lands embraced therein from public use.

The deeds from the Willapa Improvement Company to the respective respondents described the property by lot and block number as delineated or designated upon the plat of Hyada park, filed for record April 9, 1908, with the auditor of Pierce county. The boundary lines of lots 43, 44 and 45, as shown on the recorded plat, extended only to Kla-Pache avenue, hence the deeds to the respondent conveyed only the land to such boundary line.

That is to say, *after* Kla-Pache avenue was vacated, it became a *distinct* parcel of land, and did *not pass as an incident or appurtenance* to the lots by the several conveyances from the company to the respondents. *Hagen v. Bolcom Mills*, 74 Wash. 462, 133 Pac. 1000, 134 Pac. 1051; *National Bank of Tacoma v. Johnson*, 137 Wash. 452, 241 Pac. 458. In the latter case, the deed described the land as "block 38 and the *west half of vacated 'F' street.*" Later, the purchaser, X, conveyed a portion of block 38 abutting upon the west half of vacated "F" street to Y, *but without including in the description the vacated strip* which had formerly been a part of "F" street. The question in the case was whether Y acquired title to the west half of vacated "F" street. Passing on the question, we there said:

"As has been often stated, the conveyance of property abutting upon a platted street covers with it the fee to the center of the street as a part and parcel of the grant, subject, of course, to the easements in favor of the public. *Simons v. Wilson,* 61 Wash. 574, 112 Pac. 653; *Bradley v. Spokane & Inland Empire R. Co.,* 79 Wash. 455, 140 Pac. 688, L. R. A. 1917C 225; *Motoramp Garage Co. v. Tacoma,* 136 Wash. 589, 241 Pac. 16. And when the predecessor in interest of the respondent received title to block 38 while 'F' street remained a public street, it acquired title thereto; and, when the street was subsequently vacated, it got the full fee title to the vacated street, free from the easement theretofore existing. The question then is whether a subsequent deed of block 38 would carry the fee title to what had at one time been the street.

"The conveyance from respondent to the appellants described the lots in block 38 according to the plat and made no reference to the vacated 'F' street, and, by referring to vacated 'G' street, would seem to have indicated that it was not the intention to include vacated 'F' street. But it is not necessary to determine what the intention may have been, for the rule does not apply that purchasers acquire the fee to a platted street when, as a matter of fact, at the time of the purchase there was no platted street. The syllabus in *Hagen v. Bolcom Mills,* 74 Wash. 462, 133 Pac. 1000, 134 Pac. 1051, correctly stating the holding of the court in that case, covers the instant situation and is decisive in respondent's favor.

" 'Where, by vacation of a street, the owner of all the land on both sides of the street acquired the title to the street, and conveyed the whole property describing the street as a distinct parcel, its future status as such is fixed, and the conveyance is notice to all subsequent grantees in the chain of title that the street is to be treated as a separate tract which does not pass by a subsequent conveyance of abutting lots; since the owner could fix its status and convey it apart from the lots, land is not appurtenant to land, and subsequent purchasers do not buy with reference to a platted street where there is none at the time of their purchase.' "

Elliott on Roads and Streets (4th ed.), § 1192, announces this same rule, which also seems to be well stated in the case of *White v. Jefferson,* 110 Minn. 276, 124 N. W. 373, 125 N. W. 262, 32 L. R. A. (N. S.) 778, from which we quote as follows:

"Where, however, the street has been vacated while the original proprietor owns the lots in question, the situation is substantially different. On vacation of a street in a case like the one at bar, he owns lots 23 and 24 and the space between in fee simple. He can transfer the whole tract, or any part of it, or transfer lot 23 to any person, and lot 24 to another person, and the space between the two to a third person. It is immaterial in what order of time such transfers were made. If the strip was granted before the lots, the intention would be certain; if afterwards, equally clear. What had been a street would be mere land. It would be taxable as land and so descend. . . . The case would be the same as if no street had ever existed, and, instead of being designated as 'street,' the tract had been marked 'sand hole,' or 'mound,' or any other name, or had no name. The land which had been a street assumed exactly the same legal status as any other land which had not been impressed with a public easement. There is neither mystery nor magic in the word 'street.' The easement of use is the significant fact.

"When the easement ceases, there is no occasion nor justification for any imputation of intention. The parties would contract with reference to a record showing no street existed."

In the *Hagen* case, *supra,* in applying the principle announced in the *White* case, *supra,* we said in part:

"The learned justice then reviews the authorities, from which he extracted the governing principle in this class of cases, 'That land is never appurtenant to land;' or, as we may put it, a fee may carry an easement or a lesser estate as an incident or an accretion, but the conveyance of the fee simple title to one piece of land will not carry as an incident or an accretion a fee of equal or greater degree and quality."

The rule is well stated by Tiffany on Real Property, Vol. 2, page 1665, as follows:

"The fact that the land as described [meaning by lot and block] borders on a strip which had previously been a highway, but which is no longer such, the highway having been vacated before the delivery of the conveyance, has been held not to make the conveyance effective to pass any part of that strip."

From the rule as announced in the foregoing authorities, it follows that the respondents by their respective deeds received no more than the particular lots conveyed. They acquired no interest whatever in what was formerly Kla-Pache avenue.

The same result follows with reference to the conveyance from the Willapa Company to Willson, *unless* it be held that the deed to Willson described the land which was formerly Kla-Pache avenue with sufficient particularity. Hence the question to be determined is what property was conveyed to Willson by the deed from the Willapa Improvement Company of July 12, 1927. Rather, the specific question is whether the italicized portion of the deed, set forth earlier in this opinion, conveyed any part of Kla-Pache avenue.

It will be noticed that this deed does not specifically describe any of the property vacated. And since none of the vacated area indicated on the sketch as "property in dispute" *attached to and formed a part of* lots 1 and 2, it follows that that deed did not convey any portion of the property in dispute. Willson, of course, could not convey title to property which he had not acquired, and since he acquired, by his deed, no title to the "property in dispute," it must be held that the appellant acquired no title thereto. And since the Willapa Improvement Company, by its quit-claim deeds to the respondents, specifically described and

conveyed the property indicated on the sketch as "property in dispute," it follows that the title thereto passed to them. Therefore, the appellant could not have the title to the disputed area quieted in it.

While the question as to whether the vacated twenty-foot strip on Hyada boulevard, abutting the north boundary line of lots 1 and 2, passed by the deed from the Willapa Improvement Company to Willson, is not directly involved in this controversy, nevertheless we deem it advisable to dispose of that issue. What we have heretofore said with reference to Kla-Pache avenue has no application to the southerly twenty feet of Hyada boulevard, for the reason that that street was not vacated *in toto* but only narrowed by twenty feet on the south side.

Section 9301, Rem. Comp. Stat., provides for the vacation of "any lot, street, alley, common or *any part thereof.*"

Section 9303, Rem. Comp. Stat., states the effect of such vacation as follows:

"The part so vacated, if it be a lot or lots, shall vest in the rightful owner, . . . and if the same be a street or alley, *the same shall be attached to the lots or ground bordering on such street or alley;* and all right or title thereto shall vest in the person or persons owning the property on each side thereof, in equal proportions: . . ." (Italics ours.)

Therefore, by operation of the statute, the *vacation order attached* this twenty-foot strip on the south of Hyada boulevard to lots 1 and 2, and enlarged these lots to that extent. Thereafter, when a deed was given to these lots, such deed carried with it the title to this twenty-foot strip.

The case of *Norton v. Gross,* 52 Wash. 341, 100 Pac. 734, involved a deed to two certain lots after an alley contiguous thereto had been vacated. In that case the court said:

" . . . . upon the vacation of the alley the land became the property of the appellants by virtue of their ownership of the abutting property. Bal. Code, § 1269 (P. C. § 3563); *Burmeister v. Howard,* 1 Wash. Ter. 207; 27 Am. & Eng. Ency. Law (2d ed.) 117. This being true, it attached to and became to all legal intent a part of the property described in the deed, and passed to the respondents under such conveyance.''

The *Norton* case was cited with approval in *Rowe v. James,* 71 Wash. 267, 128 Pac. 539, in the following words:

"In the *Norton* case, we held that, as between the vendor and the vendee, a deed to specific property carried with it by implication a quadrangular strip of land abutting upon it, which strip had formed a part of an alley to the rear of the property but which had been vacated before the property was conveyed.''

Such is the rule under our statutes, and it is also the general or common law rule. 27 Am. & Eng. Ency. Law (3rd ed.) 117.

The *Norton* case was discussed by this court in *Hagen v. Bolcom Mills, supra,* wherein the court said:

"The case of *Norton v. Gross, supra,* the case most relied on, was correctly decided, and rests upon two principles: the general rule of reversion and estoppel.''

Judgment affirmed.

All concur.