[No. 24452.    Department Two.    August 22, 1933.]

F. C. LEWIS, *Appellant,* v. THE CITY OF SEATTLE *et al.,*
*Respondents.*[1]

[1]Reported in 24 P. (2d) 427; 27 P. (2d) 1119.

*Reynolds, Ballinger, Hutson & Boldt,* for appellants.

*A. C. Van Soelen, George T. McGillivray,* and *John A. Logan,* for respondent City of Seattle.

*Edgar S. Hadley,* for respondents Reeder *et al.*

Tolman, J.—Appellant, as plaintiff, brought this action to quiet title to certain real estate and enjoin the defendant city from interfering with his possession. From an adverse judgment he has appealed to this court.

It appears that Nelson Chilberg and wife, being the owners of a considerable tract of land lying along and adjacent to the easterly shore of Puget Sound, about a mile south of Alki Point, in King county, and which was then wholly outside of the limits of any incorporated town or city, in January, 1889, platted the same under the name of Chilberg's Addition to West Seattle. The plat was duly filed for record showing dedicated streets and the property divided into lots and blocks. Lot 1, block 3, fronting on Alki avenue, according to the plat, has for its northerly boundary the southerly line of Prospect street, now known as Douglas place, which the plat shows as crossing Alki avenue at very nearly a right angle. This lot, together with the southerly half (30 feet) of Douglas place from Alki Avenue westerly to the waters of Puget Sound, is the property now occupied by the appellant, the title to which is here involved.

Appellant has a fee simple title, shown of record, to

the platted lot, and he and his predecessors in interest for at least eighteen to twenty years before the commencement of the action have occupied, with a building used for residential purposes and other improvements, the south half of Douglas place adjoining the lot under claim of title.

For more than five years following the filing of the plat, or until the year 1900, or even much later, the whole of the platted area was wholly unimproved and unoccupied. It consisted of sandy shore lands, covered more or less with brush and trees, with nothing to mark the location and boundaries of the dedicated streets on the ground. The first evidence of use or occupancy seems to have been a more or less winding and wholly unimproved road running parallel with the beach and following pretty generally the course of Alki avenue, as indicated on the plat. At first, this road was used chiefly by summer campers, and later on cottages and homes began to be built and the use of the road gradually increased.

In the year 1900, and indeed at all times since, the cross streets remained wholly unimproved. As campers or homebuilders came in, they moved about to and from the beach as best they could, and there being nothing to stop them, they angled across intervening lands to the beach wherever there were no natural obstructions, or as suited their convenience, or pleased their fancy. We do not find in the record any satisfactory evidence that there was even a well-defined foot path from Alki avenue westerly toward the beach on Douglas place until about 1920, though probably there were some evidences of pedestrians passing over prior to that time. Much is said in the testimony about access to the beach and its advantages and necessity to those who lived in the vicinity. No doubt, such access was desirable, but those enjoying it passed to

the beach anywhere and everywhere, and if at one place more than another, it seems to have been at Carroll street rather than at Douglas place.

This addition, as platted, was annexed to and became a part of the city of Seattle in July, 1907, but the city did nothing with reference to recognizing or improving Douglas place before the year 1920, and seems to have made no objection to the occupancy of appellant and his predecessors in interest until the month of June, 1931.

In 1920, the city caused a sidewalk to be constructed along the westerly side of Alki avenue, which was built right across Douglas place as though no street there existed, and in 1929, when Alki avenue was paved, the westerly curb was also constructed across Douglas place, indicating that no cross street was recognized as existing at that point.

Appellant relies upon the statute which was passed in 1890, chapter 19, Laws of 1890, p. 603, § 32, which reads:

"Any county road, or part thereof, which has heretofore been or may hereafter be authorized, which remains unopened for public use for the space of five years after the order is made or authority granted for opening the same, shall be and the same is hereby vacated, and the authority for building the same barred by lapse of time."

This statute remained in full force until amended and modified by chapter 90 of the Laws of 1909, p. 188 (Rem. Rev. Stat., § 6510).

We seem to have upheld this statute, and so construed it as to make it applicable here. *Murphy v. King County,* 45 Wash. 587, 88 Pac. 1115; *Mohr v. Pierce County,* 65 Wash. 370, 118 Pac. 321, 119 Pac. 747; *Cheney v. King County,* 72 Wash. 490, 130 Pac. 893; and *Smith v. King County,* 80 Wash. 273, 141 Pac. 695.

These cases were reviewed, and the rule was recognized as being a rule of property and reaffirmed in *Tamblin v. Crowley*, 99 Wash. 133, 168 Pac. 982. It now seems too late to question the wisdom or the justness of the rule. Indeed, neither the city nor the interveners, who own property in the same addition, seem to deny the rule, but rather to deny that appellant may obtain the advantages of it.

Some reliance seems to be placed upon the use of Douglas place by those going to and from the beach as being an opening of the street for public use in compliance with the statutory requirements, and as being so much of an opening of the street as was possible or practical under the conditions existing. All of such use, however, occurred long after the expiration of the five-year period, and after the authority for any opening of the street had been barred by the terms of the statute. But if the bar of a statute may be removed by a subsequent opening or use, still, under our holding in *Smith v. King County, supra,* the use here shown was wholly insufficient. In the *Smith* case, it was held that casual, intermittent and inconsequential use consisting of travel following winding foot paths running promiscuously without reference to the platted streets was insufficient. The use here shown is even more casual than that shown in the *Smith* case.

It is urged that, in such an action as this, the plaintiff must recover, if at all, on the strength of his own title and may not take advantage of any weakness in the title of his adversary. Very true, but we fear the assumption that appellant did not prove his own title rests upon an insecure foundation. It is true that the deeds in his chain of title describe only the platted lot. So, also, in *Murphy v. King County, supra,* the conveyances were by lot and block and in *Bradley v. Spokane & Inland Empire Railroad Co.,* 79 Wash. 455,

140 Pac. 688, L. R. A. 1917C 225, it was squarely held that street dedications convey only an easement, and that a conveyance of a lot without reservations or exceptions carries with it the fee to the center of the street subject to the easement. The *Bradley* case is a well-considered case, and, so far as we now recall, its authority has never been questioned.

There is nothing in the case of *Raleigh-Hayward Co. v. Hull,* 167 Wash. 39, 8 P. (2d) 988, which impairs the rule of the *Bradley* case. There, a formal vacation shown of record had been fully effected. The easement had been extinguished, and the owner of the abutting property became vested with full fee simple title to the tract which formerly was a street. Of course, he could convey any part of his holdings as he saw fit, but here is involved vacation by nonuser, which requires a judicial determination to establish it of record and to free the land involved from the apparent record easement.

In arguing another point, the city, in its brief of this case, makes the distinction very clear in the following language:

"The formal dedication of a plat and the placing of the same upon the public records as notice to all the world imports a status upon which purchasers have a right to rely and upon which they do rely. The vacation by nonuser is a negative thing of which purchasers have no record knowledge and which requires a factual inquiry by a court to formally establish."

If the conveyance be made after an express or an official vacation, then clearly the grantor means to convey only what the description used covers, but if the conveyance be made before the street is officially vacated and under conditions such as here obtain, the grantor must be held to convey with the lot the right to litigate and to secure a judicial vacation if the grantee considers that course to be to his advantage.

Clearly, this case is governed by the rule of the *Bradley* case, *supra*.

For much longer than the necessary statutory period, appellant and his predecessors in interest have been in open, notorious and adverse possession of that part of Douglas place which he now claims, and we think he has abundantly established his title by adverse possession.

It is also urged that there was here a rededication by subsequent conveyances, as is suggested in the case of *Brokaw v. Stanwood,* 79 Wash. 322, 140 Pac. 358. But in this case we are dealing with a statute which says that, if streets are not opened, they become vacated and the right to open is barred by the lapse of time. Everyone is presumed to know the law, and purchasers of other lots in the addition must take notice of the statute.

But however that may be, this particular lot was conveyed by Nelson Chilberg and wife, the dedicators, to the Alki Land Company in 1891, and that company conveyed the lot to Andrew Chilberg in 1899. Andrew Chilberg and his wife held title until they conveyed the lot in 1909 to the next holder in the chain of title. We find no evidence in the record of any conveyance of any other lot in the addition by the dedicators or by the Alki Land Company while they, or either of them, held title to this lot. And if title had passed to Andrew Chilberg and wife, there could of course be no rededication affecting this lot unless the then owners joined therein. Even a similarity of names indicating a close relationship would not authorize Nelson Chilberg to deed away the property of Andrew Chilberg. Since no conveyance to others was made by the dedicators while they held title to this lot, there could, of course, be no rededication by conveyance which would affect this lot.

Respondents seem also to argue that appellant does not come into court with clean hands. It is true that, before he purchased, he had some knowledge of the city's claim which was sufficient to put him on notice, but we see nothing in the situation reflecting upon appellant in even a slight degree, and certainly nothing which could be the basis of an estoppel. He had a perfect legal right to buy a disputed title and to proceed to clear that title in the manner which he did.

While we sympathize with the desire of the interveners to have access to the water by this dedicated street, still as they have stood by during these eighteen or twenty years and have seen the house occupying the southerly half of the street and, in spite of that warning, have done nothing until possession ripened into title, we can only hope that the northerly half of the street may still serve their purpose.

The judgment of the trial court is reversed, with directions to enter a decree quieting appellant's title and enjoining interference therewith.

MAIN, STEINERT, and BLAKE, JJ., concur.

BEALS, C. J., dissents.

### ON REHEARING.

[*En Banc.* December 13, 1933.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.