[No. 26511. Department Two. September 14, 1937.]

THOMAS E. HUBBARD *et al., Respondents,* v. GUST
GRANDQUIST *et al., Appellants.*[1]

[1]Reported in 71 P. (2d) 410.

*Bell, McNeil & Bowles,* for appellants.

*Allen & Wilkins (Edgar R. Rombauer,* of counsel), for respondents.

BEALS, J.—During the spring of 1925, the defendants, Gust and Anna Grandquist, were the owners of a tract of land located on the east side of Fifteenth avenue northwest, in the city of Seattle. April 28th of that year, the defendants, by contract of conditional sale, agreed to sell to L. E. Sexauer the south forty-four feet of the tract. At this time, the land which Mr. Sexauer agreed to purchase was improved with a five room bungalow. The grade of the street was approximately four feet higher than the lot level, but the lot had been filled in to the street grade as far back as the front of the house.

At this time, a garage stood on or near the southeast corner of the tract sold, and Mr. Sexauer, desiring to raise the entire lot to the grade of the street, moved the garage to the northeast corner as soon as he had filled that portion of the lot. In driving his car in and out of this garage, Mr. Sexauer, in driving past his house, used a portion of the land remaining in defendants' ownership, as there was insufficient land between his house and his lot line to afford him a driveway wide enough for the ordinary automobile. The driveway used was four feet on defendants' land, and three feet on that covered by the contract of sale.

During the summer of 1925, the defendants constructed a dwelling on the portion of the tract which

they still owned, and have resided there ever since. Defendants paid for filling in the southerly portion of their land and bringing the same up to grade, including that portion of their land occupied by the driveway. Defendants used the driveway located partially on their lot and partially on that which they had agreed to sell to Mr. Sexauer, for deliveries of fuel, and it appears that, for a while, they maintained a garage on their southerly lot line, adjacent to that belonging to respondents. Mr. Grandquist testified that he wanted a driveway, and that he intended to construct one entirely on his own property. The only permanent improvement on the existing driveway was made when the street was paved, at which time an opening was left in the curb at the appropriate position to be used in connection with the driveway, and some small amount of concrete paving laid. The cost of this matter was assessed one-half against each lot.

During the early portion of the year 1930, plaintiffs, Thomas E. and Cora Hubbard, took an assignment from Mr. and Mrs. Sexauer of the latter's interest in the real estate contract. Prior to making this purchase, plaintiffs examined the premises and observed the driveway, which had, at that time, been in use for almost five years. Plaintiffs entered into possession of the property, carried out the terms of the contract, and during the year 1932, received from defendants a deed to the property.

During all this time, and continuously until January, 1936, the driveway was used in common by plaintiffs and defendants, and apparently it was never intimated that either party objected to the use of the driveway by the other until the date last mentioned, when defendants commenced the erection of a fence on their property line, which would, of course, pre-

vent the use of the driveway as it had theretofore been located. Plaintiffs thereupon instituted this action to enjoin defendants from interfering with the use of the driveway; and from a decree in plaintiffs' favor, defendants have appealed.

By its express terms, the decree entered by the trial court establishes a permanent easement in favor of respondents, covering the south four feet of appellants' property, and a similar easement in favor of appellants, covering the north three feet of respondents' property.

As stated by appellants in their brief, the formal assignment of errors made presents two questions:

"(1) Have the plaintiffs proved facts sufficient to establish an easement in the property of the defendants?

"(2) Have the plaintiffs a right to recover against the defendants as a matter of law?"

Appellants argue that the complaint was prepared, and the case tried below, upon the theory that respondents were contending that they had acquired an easement by prescription. The trial court entered findings of fact and conclusions of law, and appellants contend that the court's findings are based upon the theory that the evidence showed that respondents were entitled to maintain the easement which the court awarded them because of adverse use thereof for the statutory period.

It does not appear that the findings entered state only facts which tend to support respondents' claim upon the ground of their adverse use of the driveway for ten years or more. In their answering brief, respondents base the major portion of their argument upon their contention that the record shows that the court properly granted them an easement as by implication. In their complaint, respondents alleged

that, at the time they took an assignment of the real estate contract, the driveway in question was well established, and that they purchased the premises with the understanding that the driveway would remain as established—a community driveway. They also alleged that the driveway had been at all times thereafter used jointly by the parties to the action; and that, because of the location of the dwelling house upon their property, the construction of any other driveway on their property was impossible, save at great expense and in such manner as would greatly diminish the value of their land. Respondents also alleged that, prior to the institution of this action, they fully performed the contract and became the owners of the property in fee simple.

The allegations referred to sufficiently present the question of respondents' claim to an easement by implication, and if the evidence supports a decree in their favor upon this ground, the decree will not be reversed, even though the facts found by the trial court do not support the decree. This was an action in equity, and findings were not required. The evidence is before us by way of a statement of facts, and will be considered in deciding whether or not the decree finds support therein. On appeal, the case is heard *de novo*, and this court must search the entire record in determining whether or not the decree entered shall be affirmed or reversed. *Soboda v. Nolf & Co.*, 91 Wash. 446, 157 Pac. 1100; *Olson v. Fireoved*, 129 Wash. 635, 225 Pac. 643.

Appellants argue that the record does not support a decree in respondents' favor upon the ground that respondents have acquired an easement by prescription. It clearly appears that the use of appellants' property was, in the first instance, permissive only, and it does not appear that this use changed its char-

acter and was asserted adversely to appellants or under a claim of right, until some date much less than ten years prior to the institution of this action.

■ In the case of *Bailey v. Hennessey*, 112 Wash. 45, 191 Pac. 863, this court held that the trial court had correctly determined that an easement by implication existed and was impressed upon the servient tenement owned by the party resisting the establishment of a right of way. In the course of the opinion, the court discussed the principle governing easements by implication, and distinguished easements of that character from easements by prescription, public easements, or private rights of way of necessity. In the course of its opinion, this court said:

"Easements by implication arise where property has been held in a unified title, and during such time an open and notorious servitude has apparently been impressed upon one part of the estate in favor of another part, and such servitude, at the time that the unity of title has been dissolved by a division of the property or a severance of the title, has been in use and is reasonably necessary for the fair enjoyment of the portion benefited by such use. The rule, then, is, that upon such severance, there arises, by implication of law, a grant of the right to continue such use. . . .

"Some courts have said that these easements are granted on the principle of estoppel; that is, that the grantor cannot derogate from his own grant. Other courts have based the right upon the presumption that the parties have made and received the conveyance having in view the condition of the property as it actually was at the time of the sale, and that therefore neither, without the consent of the other, can change the open and apparent conditions to the detriment of the other. . . .

"Three things are regarded as essential to create an easement by implication; first, 'a separation of the title; second, that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and so obvious or manifest as to

show that it was meant to be permanent; and, third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained.' 9 R. C. L. 757."

Appellants argue that respondents cannot claim an easement by implication, appellants assuming that the severance of title occurred when they contracted to sell a portion of their land to Mr. Sexauer, and that, as at this time the driveway was not in existence, the severance of title came before the establishment of the use, and consequently one of the elements which must be present, if an easement by implication is to arise, is wanting.

The severance of title arose at the time appellants conveyed the property to respondents, pursuant to the contract which respondents, as assignees of the original vendees, had completely carried out. An ordinary contract for the sale of real estate vests no title in the vendee. It cannot be held that the making of such a contract, whereby the owner of a tract of land agrees to sell a portion of it to another, severs the title. As this court said in the case of *Culmback v. Stevens,* 158 Wash. 675, 291 Pac. 705:

"Whatever this court may have said heretofore on the question of the effect of such contracts in *Schaefer v. Gregory Co.,* 112 Wash. 408, 192 Pac. 968; *Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29, or *In re Kuhn's Estate,* 132 Wash. 678, 233 Pac. 293, we now say that it creates a right enforceable against the land which is the subject of the contract; a right which cannot be taken away by either the grantor in the contract or by any one, with notice of the contract, claiming under, by or through the grantor, unless for a breach of the conditions of the contract by the grantee.

"It must follow that the interest in the property remaining in the grantors after the execution of the contract to the Richardsons was an incumbered title; that it was a legal title subject to be defeated absolutely by a performance of the contract on the part

of the grantees, and subject to be reinstated in full on a breach of the contract. The real beneficial interest remaining in the grantors was the right to receive the payments as they fell due on the contract."

While the actual beneficial interest which appellants had in the property as long as the contract remained in good standing amounted to no more than the right to receive the contract payments as they fell due, the legal title to the land remained in appellants until they conveyed the same by deed. The actual severance thus occurred at the time the deed was delivered.

It is true, as contended by appellants, that respondents simply succeeded to the rights of the Sexauers. When respondents purchased the contract, the driveway was clearly indicated upon the ground, had been used for several years by respondents' assignors, and as the house and garage then stood upon the property was necessary for the use of the latter. When in due time, after respondents had completed the payments due under the contract, appellants conveyed to them the property to which they had become entitled, the title was severed, but clearly, from the facts shown, in the absence of agreement, or at least claim to the contrary made or asserted at the time the deed was given, an easement by implication had become established and impressed upon the servient estate owned by appellants.

Appellants contend that it does not appear that an easement is necessary to respondents' enjoyment of the premises, and that, as it is possible to establish an entrance to respondents' garage over the south side of their property, they cannot maintain their claim to the existing driveway. Appellants argue that they have not and never had any control over the existing conditions on respondents' property, and that they could not have prevented respondents' as-

signees from filling in their lot and thereby creating the conditions which now render the construction of a driveway extremely expensive.

While it is true that appellants could not have kept Mr. Sexauer from filling in his property, they could have prevented him from using any portion of their land as a driveway to and from his garage. They could have insisted upon this use being governed by some form of written contract, or they could have terminated the use prior to the severance of title. On the contrary, they assisted in the establishment of the driveway, paid half the expense of preparing an entrance thereto from the paved street, and themselves used the driveway as suited their own convenience. A driveway is convenient, if not necessary, to appellants. Mr. Grandquist stated that he wanted a driveway and intended to construct one. The entrance through the curb is just wide enough for an automobile, and indicates that, at that time, appellants contemplated no driveway other than the one then in use. Appellants cannot now, after having conveyed the land to respondents, successfully urge, over the objection of respondents, that they can fence that portion of the driveway which crosses their land.

Appellants also urge that, in addition to the requisites referred to in the case of *Bailey v. Hennessey, supra,* before an easement by implication can be established, it must appear that the servitude imposed upon the retained land is one that has been initiated and imposed by the owner during the period that both properties were held under a unified title, citing *Cogswell v. Cogswell,* 81 Wash. 315, 142 Pac. 655. In the *Cogswell* case, this court, referring to the leading case of *Nicholas v. Chamberlain,* 2 Croke's K. B. Rep. 121, said:

"It is plainly stated in that case that, where the owner of land constructs a conduit from a spring to the house, and thereafter sells the house with the land, the conduit passes as an appurtenant to the house. But if a lessee or a disseisor constructs the conduit, upon the termination of his lease, or the termination of his possession, the conduit does not pass as an appurtenant when the owner does not use or take cognizance of the conduit."

This court followed the rule laid down in the *Chamberlain* case.

Appellants contend that, in the case at bar, as far as they were concerned, the use of the driveway was merely permissive and that the use was initiated by Mr. Sexauer. It is, of course, true that the evidence clearly shows that the driveway was first established purely for Mr. Sexauer's convenience. It also, however, appears from the evidence that thereafter appellants, the owners, both used and took cognizance of the driveway. Appellants paid their portion of the cost of the entrance to the driveway from the street at the time the latter was paved, and themselves used the driveway for their own convenience. Appellants desired a driveway into their property, and if the present one were closed, would construct another closely paralleling it. These facts distinguish the case at bar from the facts of the *Cogswell* case.

We hold that the evidence shows the establishment by implication of such an easement as the trial court provided for by its decree, and the decree is accordingly affirmed.

STEINERT, C. J., MAIN, ROBINSON, and HOLCOMB, JJ., concur.