[No. 32960. Department One. September 8, 1955.]

WILLIAM E. TURNER *et al., Respondents,* v. RALPH F.
DAVISSON *et al., Appellants.*[1]

[1]Reported in 287 P. (2d) 726.

*E. K. Murray* and *E. M. Murray,* for appellants.

*Robert B. Abel,* for respondents.

FINLEY, J.—The question in this case is whether the respondents have a right to an easement or a right of access to certain portions of their property over certain streets

purportedly dedicated in 1890 by the platting of a subdivision known as Lake Steilacoom Park Addition, Pierce county, Washington. The parts of the plat or subdivision involved in the controversy in this case are reproduced in the following map. The map dispenses with the necessity of lengthy and somewhat complicated written descriptions of streets, lots, boundaries, and railroad right of way. Our discussion of the underlying legal questions involved in this case may be considerably simplified if the map is kept

clearly in mind, or referred to frequently as the discussion proceeds.

Before it was subdivided and officially designated as Lake Steilacoom Park Addition, the large tract of unimproved land, comprising the entire Lake Steilacoom Park Addition, was owned by DeWitt Clinton Davisson. It was from him that all of the parties here involved derive title, except in the two instances discussed hereinafter. In the process of settling the DeWitt Clinton Davisson estate, the unimproved tract was conveyed, on November 5, 1889, to the Lake Steilacoom Improvement Company. Previously, on May 15, 1889, a fifty-foot right of way across the tract was conveyed to the Tacoma & Lake City Railroad & Navigation Co. for the tracks of a steam railway, which, subsequently, was built and operated for several years. The Lake Steilacoom Improvement Company platted the tract and filed the plat on February 21, 1890, in Book 4 of Plats, p. 103, records of the auditor of Pierce county.

On May 10, 1897, the Lake Steilacoom Improvement Company reconveyed a part of the tract, including all of Blocks C, D, 19, 20, and 21, to Margery B. Davisson, widow of De-Witt Clinton Davisson. All of this property was in turn conveyed, on April 30, 1901, by Margery B. Davisson to Ira S. Davisson (father of appellant, Ralph F. Davisson), from whom (except for the two parcels of land mentioned above and discussed hereinafter) all parties to the case at bar directly derived title to the property herein involved.

The railroad right of way was conveyed, on March 8, 1905, by the Railroad & Navigation Company to the Pacific Traction Co., which established an electric railway thereon in 1907, and operated it until 1927. After the termination of its operations, the Traction Company conveyed title to the railroad right of way to Ira S. Davisson in two separate conveyances, on January 25, 1930, and August 25, 1941.

By several conveyances, Ira S. Davisson conveyed to his children and children-in-law, appellants herein, all of Block 20, and parts of Block D, as well as the former railroad right of way and any parts of vacated streets which might have attached thereto. (See above map.) In other words, the

appellants own all of Block 20, all of Block D south of Ponce de Leon creek, and parts of Block D north of the creek, the portion of officially vacated Ponce de Leon avenue (shaded on the above map) lying between Blocks 20 and D, the east twenty-five feet of Railroad avenue lying east of the railroad right of way and abutting on the latter two blocks, the former railroad right of way, and the portion of Railroad avenue abutting on Block C and lying between the south line of Spring street and the north line of Ponce de Leon avenue. They also claim title to (a) all of the fifty-foot portion of Railroad avenue west of the former railroad right of way, lying between Wildaire road and Ponce de Leon avenue, as well as claiming title to (b) the whole fifty-foot portion of Railroad avenue west of the former railroad right of way, lying north of Spring street and abutting on the part of Railroad avenue owned by them. These last two claims, (a) and (b), are disputed by the Turners, the respondents, and are involved in this action.

In 1933, the Turners contracted to buy from Ira S. Davisson Block C and Lots 6, 7, 8, 9, 16, 17, 18, 19, in Block 19. The land was conveyed to the Turners in 1936. It has been stipulated that the Turners fenced this property in 1933, when they went into possession, including the north twenty feet of Ponce de Leon avenue to Railroad avenue and the south thirty feet of Spring street to Railroad avenue. The deed from Ira S. Davisson to the Turners *specifically excluded from the conveyance any part of Railroad (Whitman) avenue abutting on Block C.*

In 1917, Ira S. Davisson conveyed to Belle Morse Lots 1, 2, 3, 26, 27, 28, in Block 21, together with the south twenty feet of Ponce de Leon avenue and the west twenty-five feet of Railroad avenue abutting on these lots, with the southwest rectangular portion (20 x 25 feet) of the intersection of the two above streets. The Turners are disputing Ira S. Davisson's right to convey any part of Railroad avenue, or of the intersection. Ralph F. Davisson, appellant, contracted on February 19, 1953, to buy the Morse property located in Block 21. The above discussion outlines the chain of title of each of the parties to the present action.

In 1913, prior to the above-mentioned conveyances by Ira S. Davisson, he petitioned the commissioners of Pierce county to have Ponce de Leon avenue and parts of Railroad avenue formally vacated. The petition was granted, and an order dated October 30, 1913 vacated Railroad avenue from the southern to the northern line of Block C, and Ponce de Leon avenue from the western line of Block C to the eastern line of Block D. (The streets formally vacated are shaded on the above map or illustration.)

In 1933, shortly after they took possession of Block C, the Turners petitioned the county commissioners for a formal vacation of parts of Spring street, west of Railroad avenue. The petition was granted. In 1942, and again in 1946, the appellants, the Morses, and others, petitioned the county commissioners to have the remaining portions of Railroad avenue, between Wildaire road and Avondale street, *formally vacated*. Each time the county engineer made an adverse report, stating that the area was building up and that the county would need additional streets, whereupon the matter was dropped. The Turners signed the second petition (1946), but several days later withdrew their names.

The events leading to the present action are as follows. As established by the evidence, the Davissons and the Morses maintained a fence across Railroad avenue at Wildaire road, off and on, during a period of at least twenty years. Furthermore, Ralph F. Davisson, for a number of years, maintained a fence across Railroad avenue at about the middle of Spring street. In 1946, after the Turners withdrew from the vacation petition, they proposed to the Davissons improvement of Railroad avenue, claiming at the time a right of ingress and egress to Block C from the north and from the south over Railroad avenue. The Davissons did not agree. However, nothing further happened until 1953, when the Turners sent heavy construction or building equipment along Railroad avenue, going south from Avondale street, and either knocked down or put aside the fence built by Ralph Davisson, and entered Block C. Thereupon, Ralph F. Davisson built a log barricade across Railroad avenue at Spring street.

The Turners commenced the present action against Ralph F. Davisson, praying for an injunction as to the obstructions (barricades and fences) on Railroad avenue and an adjudication of their rights to ingress and egress to Block C over Railroad avenue from *both the south and the north*. They base their claims, first, on the contention that Railroad avenue is a public street (except for the part vacated by the order of 1913), having been dedicated as such by the filing of the plat of the subdivision in 1890. They further contend that, even if Railroad avenue had been vacated by operation of law, the public acquired prescriptive rights to its use. In the alternative, the Turners claim private easements of ingress and egress, either by prescription or as abutting owners on Railroad avenue. Finally, they claim that they have a right to a way of necessity over Railroad avenue from Wildaire road to the south part of Block C, because of the topography of Block C, as discussed below.

The other members of the Davisson family owning property in Blocks 20 and D were permitted to intervene. The defendants and interveners denied the Turners' rights of ingress and egress, and cross-complained, praying that the title to the disputed portions of Railroad avenue be quieted in them. The decree of the trial court was in favor of the Turners. It determined that Railroad avenue was a public road, except for the part formally vacated in 1913, and enjoined the defendants and interveners from obstructing Railroad avenue with fences or barricades. This appeal followed.

It is undisputed that, at the time when the plat of Lake Steilacoom Park Addition was filed (1890), the whole area was wild and uninhabited prairie. There was only one road open to vehicular traffic—the old Tacoma-Olympia road, which ran to the east of the area in dispute, somewhat along the present Gravelly Lake drive. It is also undisputed that this state of affairs persisted for a number of years. All of the blocks, lots, and streets referred to herein existed only on paper. At the time, there was nothing in the topography of the terrain itself to identify them.

With the completion of the steam railroad, and later the electric railway, people started going into the area, either to

picnic, to fish in Ponce de Leon creek, to enjoy the country-side, or to live there permanently. Some of the streets in the addition began to be used regularly as houses were built. However, this was not true as to Railroad avenue. It was never improved. There is undisputed evidence that the county never spent any money on it. Even the brush, trees, and stumps were never cleared away. Over the years, apparently there came to be a more or less well-defined path, which, in a general way, followed the railroad right of way.

Most of the evidence introduced at the trial was concerned with the amount of traffic on Railroad avenue. The evidence is conflicting and rather involved, since it covers a span of over sixty years. It established nothing more than that the general area known as Railroad avenue had been used by picnickers and fishermen in the early years of the twentieth century; that, thereafter, it was used by the neighborhood children as a short-cut on the way to school; that it was continued to be used by occasional hikers, and was also used by repair crews of the Puget Sound Power & Light Co., which checked and repaired a power line running on or along the former railroad right of way. There was also evidence of very occasional vehicular traffic. Several times Mr. Turner's friends drove from Wildaire road onto Block C to cut and carry away fire wood. Viewed in the light most favorable to the Turners, the evidence discloses only an intermittent use over no well-defined path.

It should be mentioned that the evidence shows that Block C is bisected by Ponce de Leon creek, which runs in a very deep ravine; that access from the portion of Block C on one side of the creek to the portion on the other side of the creek presents quite a problem, because it would require the expenditure of large sums of money to bridge the ravine for vehicular traffic. At present, the ravine is spanned by three footbridges within the area of Block C.

The evidence further shows that, at the time the Turners purchased the property in question, they were familiar with the general area comprising Lake Steilacoom Park Addition. They were aware of the formal vacation of some of the streets. In fact, this was one of the reasons they purchased

the property, as they were looking for a quiet place in which Mr. Turner could recuperate from an illness. As part of this desire for peace and isolation, they filed the successful petition to have part of Spring street formally vacated. The present disagreement between the parties seems to have arisen as a result of a decision by the Turners to subdivide and to sell part of their property. This could not be done profitably without adequate means of access from Wildaire road over Railroad avenue to the part of Block C south of the deep ravine, which, as mentioned, traverses or bisects Block C. Access to the north part of Block C over Railroad avenue would be convenient to the Turners, but they have other means of access thereto over Meadow road or an existing driveway between their lots in Block 19.

At the time of the filing of the plat of Lake Steilacoom Park Addition and the dedication of the streets here involved (1890), the addition was outside of the limits of any incorporated city, town, or village, and the provisions of Laws of 1889-1890, chapter XIX, § 32, p. 603, which reads as follows, were in force:

"Any county road, or part thereof, which has heretofore been or may hereafter be authorized, which remains unopened for public use for the space of five years after the order is made or authority granted for opening the same, *shall be and the same is hereby vacated,* and the authority for building the same barred by lapse of time." (Italics ours.)

In construing this statute, in *Murphy v. King County,* 45 Wash. 587, 88 Pac. 1115, the court held that the filing of a plat dedicating certain streets to public use, outside of the limits of an incorporated city, town, or village, made them county roads and subjected them to the provisions of the above chapter. This court has also repeatedly held that the mere existence of a footpath used occasionally by the public is not enough to constitute an opening of a road within the meaning of the above statute. *Cheney v. King County,* 72 Wash. 490, 130 Pac. 893; *Smith v. King County,* 80 Wash. 273, 141 Pac. 695; *Lewis v. Seattle,* 174 Wash. 219, 24 P. (2d) 427, 27 P. (2d) 1119.

■ The time from 1890 through 1895 is the crucial period as to the application and effect of the above statute. The evidence is undisputed that, during the crucial period, the purportedly dedicated streets involved in this litigation were used only intermittently, and not in the same well-defined manner (systematically) by the public. We hold that they were vacated in 1895 by operation of law, and that the public lost any easement rights in the streets. While the above statute has been amended by Laws of 1909, chapter 90, § 1, p. 188 [*cf.* RCW 36.87.090], the amendment did not divest property rights theretofore acquired by operation of the laws of 1890. *Lewis v. Seattle, supra,* and cases cited.

■ The Turners argue that, by filing petitions with the county commissioners in 1942 and 1946, asking for a formal vacation of the remaining portions of Railroad avenue between Wildaire road and Avondale street, the appellants Davisson admitted that such portions of this street were never vacated. This argument is without merit. We indicated in *Lewis v. Seattle, supra,* that a vacation by operation of law requires a judicial determination to establish it of record. Although a street is vacated by operation of law, as long as there is no formal vacation, a dedication of record is merely in effect a cloud on the owner's title, which may be removed by a vacation order of the board of county commissioners.

■ We are convinced that the public did not acquire any prescriptive rights relative to Railroad avenue. After pointing out that prescriptive rights are not favored in law, the court indicated, in *Northwest Cities Gas Co. v. Western Fuel Co.,* 13 Wn. (2d) 75, 123 P. (2d) 771, that a user to ripen into a prescriptive right must be open, notorious, continuous, and over the same well-defined and recognizable road. In *Roediger v. Cullen,* 26 Wn. (2d) 690, 175 P. (2d) 669, the court said that, in the case of public easements, the test is even more stringent, since they are more burdensome than private ones. *In State ex rel. Shorett v. Blue Ridge Club,* 22 Wn. (2d) 487, 156 P. (2d) 667, the court stated that, where land is wild, uncultivated and unenclosed, the user by the public is presumed to be permissive. See *Lewis v. Seattle,*

*supra; Lopeman v. Hansen,* 34 Wn. (2d) 291, 208 P. (2d) 130; *Todd v. Sterling,* 45 Wn. (2d) 40, 273 P. (2d) 245. The evidence in the case at bar does not show the required standard of user to establish any prescriptive rights in the public.

The Turners argue that, even if the public lost all rights to use Railroad avenue, they, nevertheless, have a private easement of ingress and egress over it. They argue that the present case is ruled by our decision in *Burkhard v. Bowen,* 32 Wn. (2d) 613, 203 P. (2d) 361, which involved a private right of easement in a platted alley to which the public had lost its rights by operation of law (Laws of 1889-1890, chapter XIX, § 32). There, the court stated that, as between themselves, common grantees from the dedicator may not question the right of ingress and egress over a platted street, and that such a private easement cannot be destroyed even by adverse possession. See, also, *Van Buren v. Trumbull,* 92 Wash. 691, 159 Pac. 891; *Howell v. King County,* 16 Wn. (2d) 557, 134 P. (2d) 80, 150 A. L. R. 640. The solution to this contention of the Turners involves an examination of their title to all of the property they now hold in the area under discussion.

The deed from Ira S. Davisson to the Turners conveyed the whole of Block C of Lake Steilacoom Park Addition, described as such. It *specifically excluded* the part of Railroad avenue vacated officially by the order of 1913, the part, fifty feet in width, west of the railroad right of way, lying between the north and the south line of Block C. The Turners do not claim any rights as to this part of Railroad avenue.

It is a general rule that the dedication of a street for public use conveys only an easement, and that, where a lot or block is conveyed as such, without reservations or exceptions, the conveyance carries with it the fee to the center of the street. *Bradley v. Spokane & Inland Empire R. Co.,* 79 Wash. 455, 140 Pac. 688. Where a dedicated street has been vacated by operation of law, but there is nothing in the public records to show the vacation, *the same rule applies,* and a conveyance by lot or block *carries with it the fee to the center of the street,* unless the street is expressly

excluded. See *Lewis v. Seattle, supra,* where, at p. 224, the court said:

"But if the conveyance be made before the street is officially vacated and under conditions such as here obtain [the street was vacated by operation of law under Laws of 1889-1890, chapter XIX, § 32], the grantor must be held to convey with the lot the right to litigate and to secure a judicial vacation if the grantee considers that course to be to his advantage."

On the other hand, the decisions of this court consistently have indicated that, where a street is officially vacated and such vacation is a part of the public records, a grantee is presumed to have notice of the fact of vacation, and a conveyance describing the property by lot or block does not carry with it any part of the vacated, abutting street, unless specifically included. *Hagen v. Bolcom Mills,* 74 Wash. 462, 133 Pac. 1000, 134 Pac. 1051; *National Bank of Tacoma v. Johnson,* 137 Wash. 452, 241 Pac. 458; *Raleigh-Hayward Co. v. Hull,* 167 Wash. 39, 8 P. (2d) 988.

In 1913, at the time of the vacation order respecting (a) the part of Railroad avenue between the north and south line of Block C, and (b) Ponce de Leon avenue from Glover street to Park boulevard, Ira S. Davisson owned the entire tract involved in this litigation. The public rights to the dedicated streets had already been extinguished by operation of law. The vacation order gave official notice as to the streets, or portions thereof, involved. Subsequently, at the time of the execution and delivery of the deed by Ira S. Davisson to the Turners, they had both *actual* and *constructive notice* of the official vacation of Ponce de Leon avenue. The deed did not include any portion of the vacated street, as did the deed to Belle Morse, and thus, under the rule of our cases, we hold that Ira S. Davisson did not convey any part of vacated Ponce de Leon avenue to the Turners. It is true that the Turners fenced off the north twenty feet of the street from Railroad avenue to the west, and ever since (1933 to the present) have been in exclusive, open, and notorious possession; thus, they have acquired title by adverse possession. However, their title to this strip

of land was derived not by grant and through Ira S. Davisson, but was acquired adversely to him.

A difference of opinion exists between the parties as to whether or not the vacation order of 1913 included the intersection of Railroad avenue and Ponce de Leon avenue. There is very little authority on this point. Our research has disclosed cases which indicate that, where two roads run on the same line, an order vacating one does not vacate the other. *Attorney General ex rel. Stickle v. The Morris & Essex R. R. Co.*, 19 N. J. Eq. (4 Greene) 386; *Larkin v. Harris*, 36 Iowa 93. Thus, under the reasoning of these cases, the portion of Ponce de Leon avenue constituting the intersection was vacated, but the portion of Railroad avenue constituting the intersection and overlapping Ponce de Leon was not vacated. However, we do not have to decide this point, as the result in the case at bar will be the same in any event.

We hold that the respondents Turner have no private easement of ingress or egress over Railroad avenue from Wildaire road to the south part of Block C. The basis of *Burkhard v. Bowen*, *supra*, relied on by the Turners, is the common origin of the title of the parties. It is admitted that the only property of the Turners which abuts on Railroad avenue is the north twenty feet of Ponce de Leon avenue, which they own by adverse possession. Of course, if the vacation order of 1913 included the intersection, the Turners' property would not abut on any portion of Railroad avenue which was not officially vacated prior to the time when they acquired title. But, conceding for the sake of argument that the particular intersection has not been officially vacated, the title to the strip of the Turners' land (the north twenty feet of Ponce de Leon) abutting on the intersection is not derived by grant from Ira S. Davisson, as the common grantor of the parties, but is acquired adversely to him. Thus, the whole theory that the common grantees of the dedicator, as among themselves, may not question each other's rights, does not apply, since the parties are not common grantees.

 The Turners claim, also, a right of easement in the part of Railroad avenue between Spring street and Avondale street. We shall now discuss this problem separately, since the applicable fact pattern is different. At the time of the execution of the real-estate contract between the Turners and Ira S. Davisson (1933), Spring street was not officially vacated. Had this situation continued until the time of delivery of the deed and conveyance of title, the case would fall directly under the rule of *Lewis v. Seattle*, *supra*, and the deed would have carried with it title to the south thirty feet of Spring street. However, as described above, when the Turners went into possession of Block C, they successfully petitioned the county commissioners to have Spring street officially vacated, and the vacation order was issued and filed of record in 1933. Thus, when Ira S. Davisson executed a deed, and conveyed Block C to the Turners in 1936, Spring street was officially vacated, and the deed which conveyed Block C without mention of any part of Spring street, did not carry any part of vacated Spring street with it. This result follows the rule announced by this court in *Hubbard v. Grandquist*, 191 Wash. 442, 448, 71 P. (2d) 410, where the court said:

"*The severance of title arose at the time appellants conveyed the property to respondents,* pursuant to the contract which respondents, as assignees of the original vendees, had completely carried out." (Italics ours.)

In the *Hubbard* case, which involved the existence of an easement by implied grant, the question was whether an improvement made after the execution of the contract and transfer of possession to the vendees qualified as an open and notorious improvement made at the time when the dominant and servient estates were held under the same title. We held that it did, and we clearly indicated that the important date is the date of the delivery of the deed, and that changes affecting the land made between the time of the execution of a contract and conveyance influence easement rights of the parties. The same reasoning applies in the present case.

The Turners fenced off the south thirty feet of vacated Spring street in 1933, and have been in open, notorious, and exclusive possession ever since, and thus, have acquired *title by adverse possession*; but again, the Turners are not in privity of title with the Davissons as to the land abutting on the intersection of Railroad avenue and Spring street, and the doctrine of *Burkhard v. Bowen, supra,* is thus inapplicable.

As mentioned above, evidence introduced at the trial described the topography of Block C and the difficulty of reaching the south part of it because of the creek bisecting it. The trial court viewed the premises. In his memorandum opinion, he stated that, without means of ingress and egress from the south, that part of Block C below Ponce de Leon creek would be almost valueless to the Turners. This raises the question of whether the Turners are entitled to have a way of necessity over Railroad avenue and Ponce de Leon avenue, which would give them a means of ingress and egress to the south part of Block C. There was some conflict of testimony as to how difficult or expensive the bridging of the creek would be. The trial court, of course, heard the witnesses and examined the premises and had a first-hand opportunity to form an opinion in the matter.

However, we do not have to review the evidence, since there cannot be a way of necessity in this case as a matter of law, as it is well established in this jurisdiction that one of the elements of a way of necessity is the existence of a dominant and servient estate. *Schulenbarger v. Johnstone,* 64 Wash. 202, 116 Pac. 843. We said recently, in *Todd v. Sterling, supra,* at p. 42:

"It is not plaintiff's theory that he has established a private right of way of necessity. *There can be none over the land of a stranger,* and plaintiff does not allege the basic element for the establishment of such a right of way, a *common grantor,* immediate or remote, *of the lands owned by plaintiff and defendants.*" (Italics ours.)

As stated above, the Turners are strangers to the portions of Railroad avenue between Ponce de Leon avenue and Wildaire road. If the intersection was included in the vaca-

tion order of 1913, then their property does not abut at all. If the intersection was not included, their property abuts upon Railroad avenue by virtue of their ownership of the north twenty feet of Ponce de Leon avenue. However, their title to this land has been acquired, as shown above, by adverse possession. This twenty-foot strip of land constitutes a separate estate, the ownership of which does not give the Turners any rights of way on Railroad avenue.

If the only practicable means of ingress and egress to the south part of Block C is over Railroad avenue, going north from Wildaire road, the Turners have a complete and adequate remedy by means of a condemnation proceeding. Laws of 1913, chapter 133, p. 412 [cf. RCW 8.24.010 et seq.]. We said, in *Leinweber v. Gallaugher*, 2 Wn. (2d) 388, 391, 98 P. (2d) 311,

"In the second place, assuming, as alleged in the paragraph of their complaint which was stricken, appellants' farm is land-locked, they are not entitled to a private way of necessity without paying for it. Their remedy is by condemnation. Const., Art. I, § 16. This is not such an action. In order to avail themselves of that remedy, they must follow the procedure provided for in Rem. Rev. Stat. (Sup.), §§ 936-1, 936-2 [P. C. §§ 7658, 7659] (Laws of 1913, p. 412)."

The decree appealed from is reversed, and the causes remanded, with directions to dissolve the injunction and to quiet title to the portions of Railroad (Whitman) avenue here involved in the respective members of the Davisson family.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and ROSELLINI, JJ., concur.